# CHARLESTON.

FIRST NATIONAL BANK OF FAIRMONT v. BOWMAN et al.

SAME v. STONE et al.

McCRUM v. SAME.

HOWE'S ADMINISTRATOR v. STOWE et al.

CHILD v. HAGGERTY et al.

Submitted February 2, 1892.—Decided April 27, 1892.

1. FRAUD.
   Fraud must not only be alleged when invoked to impeach a contract, but clearly proved.

2. REVERSAL OF DECREE—COMMISSIONER IN CHANCERY.
   The decree of the Circuit Court confirming the report of its commissioner will not be disturbed on appeal unless plainly wrong.

3. FRAUDULENT CONVEYANCE.
   Where the bill alleges that a deed of trust was made to one son-in-law by a father-in-law for the benefit of another son-in-law, with intent to delay, hinder and defraud creditors, and the

beneficiary in his answer denies the fraud, and then proceeds to set out the consideration upon which the deed was based, and in doing so alleges that such consideration was in large part an un-executed promise on the part of the grantor to give to the wife of such beneficiary a large sum of money, but such gift was never consummated until the grantor became deeply involved in debt, and was about to be pressed to the wall by his creditors, *held*, the deed was void as to existing creditors, and it was error not to an-nul and set it aside.

*A. B. Fleming* and *W. B. Maxwell* for appellant cited 29 W. Va. 452; Bumf. Fraud. Con. 56; 29 W. Va. 622; 30 W. Va. 563; 32 W. Va. 240; 33 W. Va. 402; 34 W. Va. 95; Id. 697; Bump. Fraud. Con. 273–276, 280, 285; 24 W. Va. 730; 17 W. Va. 773; Bump. Fraud. Con. 31–34, 40, 44, 51, 53, 291, 295; 27 W. Va. 209.

*P. J. Crogan, W. G. Worley* and *G. E. Price* for appellees cited 1 Tuck. s. p. 167, 168; 2 Min. Inst. 197; Wash. Eas. & Serv. s. p. 517; 1 Perry Trusts 10, 427.

Lucas President:

These five causes, so far as they affect the interests of the appellees Pugh, Goff, Pierce and Ennis, were instituted by the plaintiffs the First National Bank of Fairmont and L. L. McCrum for the purpose of assailing certain convey-ances made and transactions had by and between the de-fendants A. H. Bowman and E. B. Stone and the said ap-pellees herein, as fraudulent; and seeking to have the property which was the subject of said conveyances and transactions sold for the satisfaction of certain debts due the said Bank of Fairmont and the said McCrum from the said Bowman and said Stone.

These conveyances and transactions were as follows: Deed of trust from Bowman to secure Goff, dated Decem-ber 2, 1887, recorded February 25, 1888; deed of trust from one James H. Plum, to secure Goff, March 1, 1888; judg-ment confessed by Bowman in favor of Goff, April 9, 1888; deed from Stone to Goff, dated March 8, 1888; conveyance by Stone of stock of merchandise to Pugh, March 20, 1888; conveyance by Stone of sawmill to Ennis, August 10, 1886, delivered in 1888; deed of trust from Bowman to secure

Pierce, March 20, 1888 ; transfer of George W. and William G. White notes by Bowman to Pierce. All of said transactions so assailed were held valid by the Circuit Court, except the trust deed from Plum to secure Goff, and the transfer of the said White notes by Bowman to Pierce, which latter two transactions were by the said Circuit Court canceled, and the subject-matter given to the creditors of the said Bowman. From the decrees holding valid the said other transactions the First National Bank of Fairmont was granted this appeal.

The consideration and discussion of the voluminous record in this case will be much simplified and abbreviated by the agreement of counsel that irrelevant matter should be eliminated. The fact, that we have before us a record only partially complete, will render it improper for us to consider any errors except those complained of and assigned by the only appellant, the First National Bank of Fairmont, a plaintiff in the court below.

The first error assigned relates to the sale of E. B. Stone to Joseph A. Pugh of a stock of goods in a store. An examination of the facts admitted and taken for confessed in this cause will sufficiently establish a case of fraudulent intent on the part of both Adam H. Bowman and E. B. Stone. Every recognized badge of fraud is plainly manifested by their conduct. On the 1st of January, 1888, they were respectively reputed to be men of considerable means, and had a large amount of property, both real and personal, in their possession and standing in their names. They entered into partnership with Howe and had assumed large liabilities, which they proved unable to meet, and, according to Stone's own evidence, at the expiration of about five months from the time that Stone, Bowman & Co. commenced business—that is, about February 14, 1888—they became embarrassed and suspended. Almost immediately thereafter Bowman and Stone began to divest themselves of all their tangible property, disposing of the same mainly to relations, connections or business associates. Many of these sales purport to have been made for cash, and no account is attempted to be given as to the disposition made of the proceeds.

In the case of Joseph A. Pugh the court below seems to have regarded that there was no fraud. Pugh was a young man, engaged in hauling and carting in Rolesburg, and had saved some money. The preponderating evidence is that he bought a half interest in the store of E. B. Stone in the summer or early autumn of 1887, and paid nine hundred and twenty seven dollars and sixty nine cents for the same in cash or its equivalent. When Stone found that he was about to go to the wall, and attachments were being issued against Stone, Bowman & Co., he made an arrangement with his partner, Pugh, to buy out his half interest; and they testify that this was done, Stone receiving no cash, but only credit for what he had drawn out at various times in the shape of cash, to the amount of one thousand and sixty two dollars and fifty cents, and Pugh assuming the debts. No inventory was taken, and nothing said as to what Pugh, the other partner, may have drawn out, and which should have been charged to him. In fact both partners recognized that Stone was in trouble, and, under impending suits against him, they, to use the language of Pugh in his deposition, "lumped it off."

Under the evidence and circumstances, I think their conduct fraudulent, and the decree of the Circuit Court erroneous in holding otherwise.

But, nevertheless, it remains to be considered whether the appellant has been injured. The stock of goods has been sold by the sheriff, and, after deducting his phenomenal and enormous account of expenses, aggregating more than one half of the whole, there appears from the commissioner's report to be no residuum to divide between the partners after paying social debts.

In *Andrews* v. *Mundy, supra*, p. 23 (14 S. E. Rep. 414) we held, in accordance with previous decisions, that when an attachment is levied upon the social assets to pay the debt of one partner, such attachment only binds his individual interest, and that interest is his proportionate share of the residuum after payment in full of the firm-debts. Now in this case the report of the commissioner, to which we must accord full credence, establishes that after actual sale by the sheriff, the deduction of bad debts and discharge of

firm-liabilities, there will be no residuum to apportion between the two partners. To reverse the decree below, therefore, upon this point, and send the case back with directions to disregard the alleged second sale, and take an account between the copartners, and audit the firm-debts, would, as the record discloses, only incur additional delay, expense and cost without any appreciable benefit to the appellant. For these reasons, therefore, we conclude that the appellant can best afford to abide by the decree below, which we will not in this respect disturb.

The second assignment is as follows: "Said court erred in holding that the sale of the three hundred acres of land in Tucker county by E. B. Stone to A. M. Goff was valid." Perceiving from the record, as we plainly do, that about the date of this sale both Stone and Goff were engaged in several fraudulent transactions, we are strongly impressed with a suspicion that this sale was tainted with fraud. But in cases of this character we can not substitute our suspicions, however strong or reasonable, for proof. Fraud must not only be alleged, when invoked to impeach a contract, but clearly proved. In pursuance of our usual practice, therefore, we must accord to the Circuit Court, when its decree confirms the report of its commissioner, full credence, unless plainly wrong; and we therefore affirm its decision upon the subject-matter of the assignment we are now considering.

The third and fourth assignments are consolidated and embraced in the seventh, which is as follows: "The court erred in its decree of the 2d of August, 1890, in decreeing any sum whatever to the defendant A. M. Goff from the defendant A. H. Bowman, and especially in holding the trust lien of three thousand, five hundred and twenty three dollars and seventy three cents and the judgment lien of three thousand and twenty five dollars and sixty one cents as valid liens for any purpose as against the debts due your petitioner, or any of the other creditors of said A. H. Bowman, who had assailed the same as fraudulent." In order to decide upon the character of the transaction here impeached, it becomes necessary to consider the pleadings.

The charge of the bill is as follows: "Plaintiff is in-

formed that about the time of the above conveyance said A. H. Bowman had due him large sums of money from other parties. The obligations, notes, and accounts for this money, plaintiff is informed, have been assigned and transferred to various and numerous parties, but particularly to his sons-in-law J. L. Pierce, C. W. Wheeler and A. M. Goff, and to his brother, S. W. Bowman ; that the plaintiff is informed that said A. H. Bowman placed his store at Rowlesburg, West Virginia, in the name of his son-in-law, the defendant C. W. Wheeler ; that said Wheeler is a young man, without any means of his own, and now, as plaintiff from information believes, is only running the same in the interest of said Bowman, and that said Bowman is furnishing and has furnished all the capital invested in said store ; that all of said conveyances, contracts, assignments, and transfers were made for the purpose of hindering, delaying, and defrauding the creditors of said A. H. Bowman, and especially for the purpose of hindering, delaying, and defrauding the plaintiff ; that plaintiff is informed that out of the thousands and thousands of dollars' worth of property and effects which said A. H. Bowman owned and had in February, 1888, every part and parcel thereof has been secreted, covered up, transferred, assigned, or disposed of in some way, with the one single object and purpose in view of hindering, delaying, and defrauding his creditors."

To this serious charge Bowman makes no answer, and, as to him, the bill is taken for confessed, and the charge of fraud must be taken to be true.

Independently of the rule of practice upon this subject, the failure of the defendant to submit to an examination or to appear in his own behalf to deny such a serious charge is a virtual confession of his guilt. Was the beneficiary in this deed of trust, made under such darkly suspicious and untoward circumstances, a participant in the fraud?

In order to solve this question, let us again recur to the pleading. In his answer he says : "This defendant denies said charges of fraud in said transactions, and now here states more in detail than shown in the records of said transactions the nature of the same. About twelve years ago the said Bowman agreed to give to the wife of the de-

fendant, who is the daughter of said Bowman, the sum of one thousand dollars as an advancement and gift, and soon afterwards did pay to her the sum of five hundred dollars on the same. Shortly thereafter said Bowman desiring to use money, borrowed this five hundred dollars from this defendant's wife, or about all of said five hundred dollars. Matters stood this way for several years. Said Bowman always acknowledged himself indebted for this amount and proper interest, and finally said Bowman executed to this defendant, by consent of this defendant's wife, three promissory notes, aggregating well up to two thousand dollars, being principal and interest of said money due. These notes were so executed before said Bowman was in any way fianancially cramped, and before he entered into the partnership of Stone, Bowman & Co. taking the transfer of the Howe property, as set forth in plaintiff's bill. This defendant and said Bowman were dealing in business together for a number of years in the course of which transactions said Bowman became largely indebted to this defendant, and this defendant confesses that he did a negligent and careless business, so far as keeping an itemized account of his dealings with said Bowman was concerned, but trusted very largely to said Bowman, who was a good business man, to keep accounts straight; this defendant being a man of but little education. A great part of said Bowman's indebtedness to this defendant was for money loaned, for cattle sold, and timber in rafts delivered to said Bowman. At the time of the execution of the note secured by the said deed of trust sought to be set aside by the plaintiff —that is to say, on 2d of December, 1887—upon a settlement made by this defendant with said Bowman, it was found by a calculation made by said Bowman that the entire indebtedness of said Bowman to this defendant, as aforesaid, together with the aggregate of the three notes above mentioned held by this defendant for his wife, amounting in all to two thousand, six hundred and fifty six dollars and ten cents; and this defendant at that date loaned to said Bowman the additional sum of one thousand dollars of this defendant's own money, making in all due to this defendant and his wife, as aforesaid, the sum of three thousand,

six hundred and fifty six dollars and ten cents, for which said Bowman executed his note to this defendant, and secured the payment of the same by the deed of trust made to said Pierce, as referred to in plaintiff's bill. The aforesaid three notes were thereupon delivered up to said Bowman. That defendant further says that the deed of trust from said Plum to this defendant was given him for the consideration of six hundred dollars credited on the said note of three thousand, six hundred and fifty six dollars and ten cents, which sum of six hundred dollars was duly credited, as shown by said note now on file in the clerk's office of the Circuit Court of said county of Preston; and while it is true that said trust was taken for the full sum then due the said Bowman, to wit, the sum of one thousand and twenty seven dollars and eighty one cents, yet it is true, as this defendant is informed and alleges, that the property conveyed by said Plum in said trust deed will not sell for more, or but little more, if any, than said sum of six hundred dollars, with its interest, and the probable costs and commissions for making the sale under the deed of trust. This credit of six hundred dollars, showing the consideration of the Plum trust, was indorsed on said notes, and filed in said clerk's office before the plaintiff instituted this suit, and it could be there seen what interest this defendant claimed in said Plum trust. As to the judgment confessed by said Bowman in favor of this defendant, referred to in the plaintiff's bill, the same was not fraudulent. This judgment was confessed for the balance due at that time of the said three thousand, six hundred and fifty six dollars and ten cents note, there being indorsed on the note at the time of the judgment the said credit of six hundred dollars in consideration of the Plum trust, and a credit of two hundred dollars besides as shown by indorsements on said note; the judgment being for the balance due of two thousand, seven hundred and fifty six dollars and forty cents. This defendant, after he had his said two trust liens, and when it was ascertained that said Bowman was bound to go down in the wreck brought about by the failure of M. E. Howe, was advised by his counsel that he would better take a judgment on the note, so that, if the property em-

braced in the trust liens would not pay the debt—as defendant was fearful it would not—that then he would have a judgment lien for any excess unpaid, and accordingly he asked said Bowman to confess judgment on said note, which he did on the 9th of April, 1888."

This account of the whole transaction leaves no doubt upon my mind as to its fraudulent character. Only one thousand dollars of the whole obligation of three thousand six hundred and fifty six dollars and ten cents, from Goff's own account of the matter, and by the most liberal and charitable construction, could be allowed to stand against the existing creditors of Bowman; and for this one thousand dollars Goff has received a deed of trust for one thousand and twenty seven dollars and eighty one cents, for which he has only allowed a credit of six hundred dollars. But even as to this one thousand dollars, the well-recognized principle of equity is that, when a party voluntarily commingles his own property with that derived as the fruit of fraud, he must abide the taint of the covinous transaction, and surrender the whole. *Hart* v. *Ten Eyck*, 2 Johns. Ch'y. 62; *Ryder* v. *Hathaway*, 21 Pick. 298; 1 Big. Fraud. 575.

And this brings us to consider the origin of the residue of this pretended debt of three thousand six hundred and fifty six dollars and ten cents. No principle is better settled than that an incomplete donation, voluntary in its inception, can not be consummated after the donor has become indebted, so as to be valid against debts existing when the consummation is attempted. Bump. Fraud Conv. 222.

Suppose this gift had been of a horse or other corporeal chattel, remaining in the possession of the donor until he became deeply in debt, could he then validly, as against existing creditors, donate it to his daughter, or her husband, by delivery of possession and bill of sale, under pretense of a voluntary promise made twelve years before? Certainly not. Neither can he so consummate a pecuniary gift. How much of this residue of two thousand six hundred and fifty six dollars and ten cents was classified as a gift, or the fruit of a former gift, by the parties themselves, it is unnecessary to inquire, since it had an origin equally as illegitimate, being the result of a calculation of former

pretended balances, not demanded by the promisee, and based exclusively upon "a calculation made by said Bowman," who was, as we have seen, confessedly engaged in perpetrating a fraud upon his creditors.

And if this transaction is upon the pleadings *prima facie* fraudulent and void as to existing creditors, it is fully confirmed as such by the evidence, the testimony of Goff himself tending strongly in that direction. He testifies that Bowman made all the calculations as to the six hundred and fifty six dollars for advances and saw-logs, and he can not, therefore, testify as to its correctness. When asked where he got the one thousand dollars which he claims to have loaned to make up the three thousand six hundred and fifty six dollars and ten cents for which the trust was given, he replies, "I will not answer that question, I reckon." Though the deed bears date 2d December, 1887, it was not recorded till February 25, 1888, and Goff nowhere rebuts the implication that it was antedated; but he admits that "it was got up and held back a little while;" and he "never took it until after it was acknowledged."

Upon the whole, the badges of fraud between the father-in-law and son-in-law in this transaction are plainly sufficient to render it null and void. The commissioner so found in effect, but the Circuit Court overruled him, and sustained the exception of Goff. In this, we think there was error, and the decree in this respect must be reversed; and this disposes also of the eighth and ninth assignments.

We return now to the fourth assignment (the fifth being nonessential) which involves the validity of the sale by E. B. Stone to Michael Ennis of a steam sawmill, engine, *etc.* So far as Stone is concerned, we should have no difficulty in believing that he was, with indecent haste, endeavoring to get his property out of his hands, and beyond the reach of his creditors; and we can not resist an impression that this sale was not by any means free from suspicion.

But we are to be governed, not by suspicions of our own minds, but by the settled principles of law and evidence. Ennis denies all fraud upon his part; and from the evidence of both plaintiff and defendants it appears that for

several years Ennis had claimed an interest in this property, and had been paying something upon it.

Were we upon the proofs now before us to declare this sale void, we should incur the risk of depriving an apparently honest man of the fruits of his labor without such clear, direct and preponderating evidence as the law upon this subject requires. This was the view of the Circuit Court, and in this we think there was no error.

The tenth assignment relates to the sale of the store by Stone to Pugh, a subject already considered and passed upon.

The eleventh and last assignment relates to empowering and directing the general receiver to collect the assets of the dissolved and defaulting firm, and hold them subject to the order of the court. This was a matter fairly in the discretion of the Circuit Court, and we must decline to interfere.

REVERSED IN PART. REMANDED.