# CHARLESTON

PICKENS' EXORS. *v.* DANIELS.

Submitted June 16, 1905.    Decided November 21, 1905.

1. COMMISSIONER'S REPORT—*Decree.*
   A decree confirming the finding of a commissioner's report and decreeing in accordance therewith, carries with it the presumption of correctness and will not be reversed, unless plainly wrong.  (p. 329.)

2. SUIT IN EQUITY—*Co-Defendants.*
   Co-defendants in a chancery suit cannot therein lawfully litigate matters between themselves wholly foreign to the matters raised by the pleadings and proofs between the plaintiffs and defendants. (p. 330.)

3. DECREE—*Decree Ascertaining Indebtedness only, Not Appealable.*
   A decree merely ascertaining a personal indebtedness from a defendant to the plaintiffs, but not decreeing payment thereof, and not fixing a lien therefor or otherwise providing for the payment thereof, is not final or appealable.  (p. 331.)

Appeal from Circuit Court, Barbour County.

Suit by John D. Pickens and others, Executors, against W. W. Daniels and others.   Decree for plaintiffs and J. N. B. Crim appealed.

*Reversed in part.*

MELVILLE PECK, for appellant.

DAYTON & DAYTON and SAM'L V. WOODS, for appellees.

COX, JUDGE:

At January rules, 1890, the executors of James Pickens filed their bill in chancery in the circuit court of Barbour county against W. W. Daniels to subject his real estate to the satisfaction of the liens of two judgments, alleged therein to have been recovered by plaintiffs' decedent in his lifetime against Daniels *et al.*   It is alleged in the bill that on the 14th day of May, 1886, Daniels assigned to the plaintiffs' decedent one-half of a certain debt (the one-half amounting to $531.05) due the firm of Crim & Daniels, composed of J. N. B. Crim and W. W. Daniels, as collateral security for the payment of said judgments; and that the collateral has proved unavailing because J. N. B. Crim, the partner of Daniels, has assumed to control the whole debt, and denied the right of Daniels to

assign such one-half to Pickens. The debt referred to was a deed of trust debt due from Mary J. Love to Crim & Daniels, and will hereafter be called the Love debt. J. N. B. Crim and two judgment lienors against the real estate of Daniels, were also made parties defendant to the bill. By answers, Daniels denied substantially that the assignment to Pickens of one-half of the Love debt was as collateral, but claimed that the assignment was in part payment of the judgments, and that afterwards on the 16th of February, 1888, he, Daniels, settled with Dever Pickens, one of the executors of James Pickens, for the residue of said judgments and exhibited a receipt showing such settlement, and claimed also that J. N. B. Crim assented and acquiesced in the said assignment, and that Crim had wrongfully appropriated the one-half of the Love debt assigned to Pickens by applying the whole of the Love debt upon the purchase money of the Love land which had been sold in another chancery suit in that court to satisfy the liens against it, and purchased by Crim. Daniels also denied any indebtedness of the firm of Crim & Daniels to Crim or any other person. By answer, Crim denied substantially that said assignment to Pickens was legal, but claimed that at the time it was made there was a large indebtedness due to Crim as a member of the firm of Crim & Daniels, and also claimed that, by agreement with Daniels, the whole of the Love debt became the property of Crim as payment on the indebtedness due him from the firm, and that upon the request of Daniels, he became the purchaser of the Love land and applied to the purchase money thereof, the part of the whole amount of the Love debt payable out of said purchase money. In May, 1900, while this suit was pending, Daniels died. Previous to his death, he conveyed the land sought to be subjected by the plaintiffs, to O. F. Hodges for $1,800, for which, in part, Hodges executed his notes to Daniels. Some of these notes were assigned by Daniels to A. W. Martin. Martin brought suit in equity against Hodges and Daniels, and in that cause Hodges paid into court to the General Receiver, purchase money amounting to $1,900, and that cause was heard with this cause at the time of the entry of the last decree of reference, and at the time of the entry of the decree here complained of, although the record of that cause was not

brought here.     After the death of Daniels, an answer was
filed by his administrator setting up practically the same de-
fenses made by his decedent.     There were two references to
a commissioner, the last one on the 15th of November,
1897, both in the lifetime of Daniels.     J. N. B. Crim filed
four exceptions to the last report of the commissioner.     A
decree was entered overruling three of the exceptions with-
out designating them, and confirming the report as modified
by the decree.     The decree in most particulars followed the
findings of the commissioner.

From this decree Crim alone appeals.     He complains of
the overruling of his exceptions to the commissioner's report
and of the decree in accordance with its findings.     By his
exception number four he objects to the report because the
whole of the Love debt was not reported as belonging to
him.     This raises the question of the correctness of the
report of the commissioner and of the decree finding that the
assignment of one-half of the Love debt by Daniels to
Pickens was valid and absolute, and that Daniels was not
indebted to plaintiffs, and that plaintiffs' judgments were
extinguished and no longer liens.     Considerable evidence was
taken upon the question as to the assignment to Pickens of one-
half of the Love debt, and upon the question whether or not
Crim assented and acquiesced therein.     This evidence is con-
flicting, but the commissioner found that the assignment was
valid and absolute and that plaintiffs' judgments were there-
fore extinguished.     The circuit court decreed to the same
effect.     While the finding of a commissioner upon a question
of fact is not as conclusive as the verdict of a jury, it is
entitled to great weight.     *Holt* v. *Taylor*, 43 W. Va. 153;
*Handy* v. *Scott*, 26 W. Va. 710; *McGuire* v. *Wright*, 18
W. Va. 507.     This decree confirming the finding of the com-
missioner and decreeing in accordance therewith, carries with
it the presumption of correctness and will not be overthrown
unless plainly wrong.     *First National Bank* v. *Bowman*,
36 W. Va. 649; *McClure-Mabie Lumber Co.* v. *Brooks*, 46
W. Va. 732; *Mann* v. *Bryant*, 12 W. Va. 516.     We have
considered all the evidence, facts, and circumstances appear-
ing, which we deem unnecessary to detail in this opinion;
and giving to them, and to the finding of the commissioner,
and to the decree of the lower court the weight to which

they are entitled under the law, we cannot say that the court erred in so decreeing. Consequently, appellants exception number four should have been overruled.

Appellant by his exception number one complains because the commissoner found a balance against him on settlement of the partnership accounts of the firm of Crim & Daniels, and by his exception number two complains because the commissioner did not find Daniels indebted to him upon such settlement, claiming that there was a large balance due him from Daniels. The consideration of the ruling of the lower court upon these exceptions raises the questions whether or not the settlement of the partnership accounts between Crim & Daniels, co-defendants, was a proper matter to be litigated in this suit, and whether or not the decree, based upon the commissioner's report, that Crim pay to Daniels' administrator $81.59 found due upon settlement of said partnership accounts, is correct. The object of plaintiffs' bill was to enforce judgment liens. It is true that the title to one-half of the Love debt was in issue between plaintiffs and defendants, J. N. B. Crim and W. W. Daniels, but this issue did not require a settlement of the partnership accounts. The state of the partnership accounts at the date of the assignment might be a material fact tending to sustain either Daniels or Crim in his contention as to the right of Daniels to make the assignment, but the present state and settlement of the partnership was foreign to the matters raised by the pleadings and the proofs between plaintiffs and defendants. The settlement of the partnership between the members thereof constituted a wholly independent subject of controversy between them, in which the plaintiffs were in no wise interested. Under the well-settled rules of equity proceedure, the matter of the settlement of the partnership accounts could not legally be litigated between these co-defendants in this suit. *Worthington* v. *Staunton*, 16 W. Va. 208; *Tavener* v. *Barrett*, 21 W. Va. 656; *Templeman* v. *Fauntleroy*, 3 Rand 434; *Hoffman* v. *Ryan*, 21 W. Va. 415; *Jones* v. *Grant*, 10 Paige 348; *Vance* v. *Evans*, 11 W. Va. 342; *Radcliff* v. *Corrothers*, 33 W. Va. 682; *Fowler* v. *Lewis' admr.*, 36 W. Va. 112. It may be claimed that after the death of Daniels, the settlement of the partnership accounts was proper in the settlement of the personal estate of Daniels; but the answer to

that claim is disclosed by this record. There was no settlement of the personal estate of Daniels in this suit. There was no personal estate before the court to be distributed, except the aforesaid fund in the hands of the General Receiver. There was no notice to creditors, no settlement of the accounts of the administrator of Daniels, no ascertainment of the personal estate and no steps were taken to ascertain it. In this condition of the record the settlement of the partnership accounts was not proper as an incident to the settlement of the personal estate of Daniels. Appellant's exception number one should have been sustained and number two overruled.

Appellant complains of the ascertainment in the decree of an indebtedness against him of $531.05, with interest from the 14th of May, 1886, in favor of plaintiffs for one-half of the Love debt, and by his exception number three he objects to the report of the commissioner because it finds him chargeable with the whole amount of the one-half of the Love debt, notwithstanding the debt was not paid in full, or entitled to be paid in full, out of the proceeds of the sale of the Love land. While the decree ascertained this indebtedness, it did not decree payment of it and did not fix a lien for it, or otherwise provide for its payment, but expressly withheld any decree for payment and continued the cause between plaintiffs and defendant Crim with leave to plaintiffs to amend their bill. Is this part of the decree final or interlocutory? A decree reciting the expressed opinion of the Judge, but not followed by the sentence of the law, is not appealable. *Hill* v. *Cronin*, 56 W. Va. 174. A decree or judgment to be final must be complete and certain in itself, and not a recital or memorandum. It must show intrinsically and distinctly and not inferentially that the matter has been adjudicated. It must contain the sentence of the law. *Hill* v. *Cronin, supra; Core* v. *Strickler*, 24 W. Va. 689; 2 Cyc. 594, 613 & 614; *Harris* v. *Refining Co.*, 41 Cal. 393; *Elliott* v. *Pell*, 1 Paige 263; *Tripp* v. *Vincent*, 3 Barb. Ch. Rep. 613. We cannot treat this ascertainment of indebtedness as more than tentative and subject to change or revision by the court below. It is not final so that it may be appealed from. Appellant's exception number three to the report of the commissioner

finding against him the whole amount of the one-half of the Love debt assigned to Pickens should have been sustained, as the appellant, if he could be charged at all, could not be charged on account of that half of the Love debt more than was payable thereon out of the proceeds of the sale of the Love land.

Appellant complains of the allowance to Samuel V. Woods of $144.79 with interest from the first day of January, 1897, for services as counsel for W. W. Daniels in this suit. This allowance was fixed as a lien on the $81.59 decreed to be paid by appellant to Daniels' administrator upon settlement of the partnership accounts, but as the decree for the payment of the $81.59 must be reversed and set aside, there remains nothing before the Court to which the lien may attach. There was no further decree for payment or provision for payment of this allowance, or of certain general debts, other than the lien debts which were ascertained by the decree against Daniels' estate. Such debts other than lien debts were only ascertained without decree for payment. The record discloses nothing for this ascertainment to operate on without further adjudication. So far as the general debts, other than lien debts, were ascertained by the decree, we must treat their ascertainment as merely interlocutory and without finality under the principles before stated.

Appellant complains that the liens were fixed and directed to be paid in an ambiguous manner out of the fund in the hands of the General Receiver, derived from the sale of the real estate of Daniels. How can appellant complain? By no pleading did he claim a lien against that fund. The liens reported and decreed against it were more than the fund. Appellant made no exception to that part of the commissioner's report ascertaining the liens against that fund, and no objection to the decree thereon when it was entered. Under these circumstances, we think appellant cannot complain against that part of the decree. *Ward* v. *Ward*, 21 W. Va. 262; *Keck* v. *Allender*, 37 W. Va. 201.

Appellant complains that costs, including a docket fee, were adjudged against him in favor of the administrator of Daniels. While this alone would not be ground for appeal, yet this Court, finding other error for which the decree must in part be reversed, may review the judgment awarding

costs against appellant. *Jones* v. *Cunningham*, 7 W. Va. 707; *Farmers' Bank* v. *Woodford*, 34 W. Va. 480; *Boggess' Heirs* v. *Robinson's Heirs*, 5 W. Va. 402; *King* v. *Burdett*, 12 W. Va. 688. We take it that this decree against Crim for costs included the costs incurred in the settlement of the partnership accounts, as other costs were decreed in favor of Daniels' administrator against the plaintiffs. The litigation as to the settlement of the partnership accounts being improper and it being necessary to reverse the decree in that regard, we think the decree for costs against appellant was also improper.

For the reasons stated, so much of the decree entered by the circuit court of Barbour county on the 31st day of May, 1904, in this cause, as ascertained the validity of the assignment of the one-half of the Love debt by Daniels to Pickens, and as decreed that Daniels was not indebted to plaintiffs at the date of the filing of their bill and that plaintiffs' judgments were extinguished and no longer liens against the real estate of Daniels and that plaintiffs pay to Daniels' administrator the costs incurred, etc., and as decreed the liens upon, and directed their payment out of, the fund in the hands of the General Receiver of said circuit court derived from the sale of the real estate of Daniels, is affirmed, and so much of said decree as adjudicated the settlement of the partnership accounts of the firm of Crim & Daniels and as decreed, that Crim pay to Daniels' administrator the sum of $81.59 and costs including docket fee, and as decreed that the allowance to Samuel V. Woods be fixed as an attorney's lien on said sum so decreed to be paid by Crim to Daniels' administrator, is reversed, set aside, and annulled, and the appellant's exceptions numbered one and three to the report of the commissioner are sustained, and appellant's exceptions numbered two and four to said report are overruled, and to the extent exceptions are hereby sustained the report is set aside, and as to the residue of said decree not above affirmed or reversed, the appeal and *supersedeas* is dismissed; and this cause is remanded to the circuit court of Barbour county for such further proceedings as may be proper therein, according to the principles herein announced and the rules governing courts of equity.

*Reversed in part.*