## CUDD et al. v. FARMERS EXCHANGE BANK.

·No. 9001—Opinion Filed Nov. 25, 1919.

(Syllabus by the Court.)

1. **Chattel Mortgages—Construction—Power of Sale.**

  · A chattel mortgage which provides that the `property cannot be sold without the written consent of the mortgagee, does not prevent the mortgagee from orally constituting the mortgagor his agent to sell the property covered by the mortgage.

2. **Replevin—Pleading—Affidavit and Bond.**

  In an action of replevin, where a petition has been filed, the affidavit and bond for the ancillary order of replevin are not parts of the pleadings, and whether a cause of action has been stated is determined by the averments of the petition.

3. **Pleading—Value—Proof.**

  Allegations of value, or amount of damages, stated in a petition, shall not be considered as true by a failure to controvert them.

Error from District Court, Garvin County; F. B. Swank, Judge.

Action by Farmers Exchange Bank of Lindsay against A. G. Cudd and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

R. E. Bowling, L. H. Hampton, and Thompson, Patterson & Farmer, for plaintiffs in error.

J. S. Garrison, C. L. McArthur, and Blanton & Andrews, for defendant in error.

PITCHFORD, J. This action was commenced in the district court of Garvin county, Oklahoma, by the Farmers Exchange Bank of Lindsay, filing its petition and affidavit in replevin against the defendants, A. G. Cudd, Homer Hybarger, and Alvin Cudd, in which it was alleged that A. G. Cudd was indebted to the plaintiff bank in the sum of $900 and attorney fees, being the balance due on a promissory note for the original sum of $4,705. The note was secured by a chattel mortgage covering certain live stock described as follows, to wit:

All cattle owned by A. G. Cudd and John Cudd, as follows:

93 steers, 2 and 3 years old, each of the value of $32, and of a total value of _____$2,996.00

22 steers and heifer calves of the value of $10, each and of the total value of _____ 220.00

3 yearling steers of the value of $20 each, and of a total value of_____ · 60.00

42 cows and their increase, each of said cows being of the value of $25, and of the total value of_____ 1,050.00

14 2-year-old heifers of the value of $25 each, and of the total value of 350.00

12 yearling heifers of the value of $20 each and of the total value of_____ 240.00

2 red Durham bulls of the value of $37.50 each, and of the total value of _____ 75.00

1 span of dark brown horse mules, 5 and 6 years old, of the value of $125 each and of the total value of 250.00

1 dark bay horse mule, 6 years old, of the value of _____ 100.00

All of said property being located upon lands controlled by A. G. Cudd, six miles east and eight miles south of Lindsay, Okla. The petition alleges that all of said property was of the value of $5,341, that plaintiff was entitled to foreclose its lien upon the mortgaged property, and that the defendants, Homer Hybarger and Alvin Cudd, claimed some right, title and interest in said property described in the mortgage; and that the defendants, and each of them, withheld said property. The defendants were served with summons. On the same day the action was instituted, an affidavit in replevin was filed against the defendants, in which affidavit the property was described as in the petition, all of the aggregate value of $5,341. The writ of replevin was executed by the sheriff's taking into his possession three mules and 39 head of cattle. The defendants, Homer Hybarger and Alvin Cudd, gave a re-delivery bond for 28 head of the cattle taken by the sheriff under the writ. The record is silent as to the disposition of the remaining cattle, together with the mules. The only light thrown on this point anywhere in the record is the reference in the separate answer of A. G. Cudd, in which he alleges that the remainder of the cattle, together with two mules, taken under the writ, were recovered by John Cudd by replevin action in the county court. Afterwards, an alias writ of replevin was issued and executed by the sheriff, by taking into his custody one yellow Jersey steer, and after holding the same for 24 hours, no bond being given by the defendants, the same was delivered to the plaintiff.

We gather from the evidence that the defendant, A. G. Cudd, borrowed from the plaintiff bank the sum of $4,705, and executed his note for this amount, securing the same as before stated. It appears to have been the understanding between the mortgagor and the mortgagee that the mortgagor, A. G. Cudd, was authorized to dispose of the property covered by the mortgage and apply the proceeds to the indebtedness. The following letter clearly shows this fact:

"Lindsay, Okla., Dec. 7, 1914.
"Mr. A. G. Cudd, Lindsay, Okla.
"Dear Sir: Your note of $4,705, dated June 13, 1914, shows the following credits:

    9-19-14_____$1,250.00
    10- 8-14_____ 1,992.42
    11-28-14_____  630.00
                              _____
                              $3,872.42

"These credits, according to our record, were made by the sale of 130 head of cattle covered by our mortgage, and leave a balance of some 58 or 60 head. This note has been due since Oct. 13th, and in our report is going to show up bad. We have made it plain to you on several occasions that we wish to clean up our cattle paper, and feel that you have had ample time to dispose of this to your best advantage. We would be pleased to have you clean up the balance on this note within the next ten days, or we will be compelled to foreclose on our mortgage. Please find copy of mortgage attached.

"Yours very truly,
"A. C. Bickell, Asst. Cashier.

"Approved by Board of Directors."

The check for $630 is as follows:

"Lindsay, Okla., Nov. 25, 1914.
"The First National Bank.
Pay to_____A. G. Cudd, or order_____$630.00 six hundred thirty and 00/100 dollars.
26 cattle.       (Signed) Homer Hybarger."
"Indorsed: A. G. Cudd,
    "Farmers Exchange Bank,
"Paid Nov. 28, 1914, First National Bank."

The bank raised no question as to the authority of the mortgagor to dispose of the cattle in the two former sales, but rather insisted that he should dispose of them and pay the proceeds upon the indebtedness. When the payments of $1,250 and $1,992.42 were made, the plaintiff knew that these sums were for cattle covered by the mortgage. The check for $630 specified that it was for cattle purchased from the mortgagor by the defendant Homer Hybarger. The plaintiff was certainly informed by this notice that the $630 represented the value of the cattle covered by the mortgage, for the mortgage specifically stated that it covered all the cattle owned by the defendant A. G. Cudd.

Plaintiff claims now that the mortgagor had no written authority to sell to Hybarger and Cudd. Under the evidence in the record,

we find full authority was given the mortgagor to dispose of all property covered by the mortgage, as agent of the mortgagee. In the affidavit for replevin, the plaintiff sought to gain possession of all the property described in the mortgage, not only that portion remaining unsold, but also the portion sold, notwithstanding it had consented to the sale as admitted by the above letter to Cudd, and the proceeds of sale were paid to the mortgagee with full knowledge of the different sales. The mortgage contained the usual clause to the effect that the mortgaged property should not be sold or disposed of in any way by the mortgagor without the written consent of the mortgagee. Notwithstanding this inhibition, the mortgagee could and did constitute the mortgagor his agent to dispose of the property mortgaged, for the purpose of liquidating the indebtedness. In Phelan v. Barnhart Bros. & Spindler, 75 Oklahoma, 181 Pac. 718, it was said:

"From the foregoing statute (section 2755, Rev. Laws 1910) it will be observed that the property mortgaged cannot be disposed of without the written consent of the mortgagee. Notwithstanding the positive terms of this statute, they are not intended to, nor do they prevent the mortgagee from constituting the mortgagor his agent to dispose of the mortgaged property."

It appears that in preparing the petition in this action, the attorneys were under the impression that a chattel mortgage should be foreclosed in the same manner as a mortgage on real estate. We have seen that not only the mortgagor, A. G. Cudd, was made a party defendant, but also Homer Hybarger and Alvin Cudd, on the theory that they claimed some interest in the property.

The record fails to show that the required statutory bond was given by the plaintiff before the issuance of the writ; however, there is no complaint raised on this point. From the course pursued, we are led to believe that no bond was given. Upon the conclusion of the evidence offered by the plaintiff, the defendants filed separate demurrers to the same, which were overruled, and the defendants elected to stand on the demurrers, whereupon the following occurred:

The Court: "You stand on your demurrer, do you?"

Mr. Hampton: "Yes, sir."

Mr. Andrews: "The plaintiff moves the court to instruct a verdict for the plaintiff in this case for the possession of the property or the value thereof as alleged in the petition. There is no denial of that. The evidence, I believe, we have failed to prove the value of the property, we would like to reopen the case and prove that it is as stated in the petition."

Mr. Hampton: "To which we object. That is a reason specifically stated in the demurrer."

The Court: "Well, I will instruct the jury to find a verdict for the plaintiff for the possession of the property, or in lieu thereof, its value. They can fix that as they see fit. We will let it stand without any proof. Gentlemen of the jury, the defendants in this case, standing on their demurrer and not introducing any evidence in the case, therefore, under the law and on motion of plaintiff, you are instructed to find a verdict for the plaintiff for the possession of the property in controversy, or in lieu thereof, its value, whatever you find it, not to exceed the amount in the replevin affidavit, five thousand three hundred and forty-one dollars. Not to exceed that amount in whatever you find its value to be. So you will go to your jury room with the bailiff and elect a foreman and you will find a verdict."

Thereafter the jury returned the following verdict:

"We, the jury, impaneled and sworn in the above entitled cause, do upon our oaths find from the law and the evidence in favor of the plaintiff, Farmers Exchange Bank of Lindsay, Okla., and against the defendants, A. G. Cudd et al., for possession of the property in controversy, or in lieu thereof, its value, in the sum of five thousand three hundred and forty-one dollars."

Judgment was thereupon rendered by the court. That portion of the judgment necessary to a better appreciation of what was done, is as follows:

"And now upon said verdict and the consideration of said cause by the court, the court finds that there is due and unpaid upon the indebtedness secured by the mortgage under which plaintiff claims possession of the property in this action, the sum of $1,762. It is, therefore, considered, ordered, adjudged and decreed by the court, that the plaintiff, Farmers Exchange Bank, of Lindsay, Okla., do have and recover of and from the defendants, A. G. Cudd, Alvin Cudd and Homer Hybarger, the property taken by the officer under the writ of replevin in this action, as shown by his return. * * * And in lieu thereof, the plaintiff have and recover from the defendants, $1,762, the same being the amount due upon the note secured by the mortgage under which plaintiff claims possession of the property in this action."

We are at a loss to understand upon what theory or view of the law a judgment could be rendered against the defendants Hybarger and Alvin Cudd for the full amount of the indebtedness due the plaintiff by the defendant A. G. Cudd. The plaintiff introduced no evidence as to the value of the property taken under the writ of replevin from the defendants Homer Hybarger and Alvin Cudd. Notwithstanding the evidence clearly established that 130 head of cattle had been disposed of

with the consent of the plaintiff and the proceeds applied on the payment of the note secured by the mortgage, still the jury were instructed to find a verdict for the plaintiff for the possession of the property in controversy, that is, all the property mentioned in the mortgage, or in lieu thereof, its value, not to exceed the amount in the replevin affidavit. $5,341.

It has been repeatedly held by this court that the affidavit for an ancillary order of replevin is not a part of the pleadings. In Jantzen v. Emanuel German Baptist Church, 27 Okla. 473, the court said:

"In an action of replevin, where a petition has been filed, the affidavit and bond for an ancillary order of replevin are not parts of the pleadings, and whether a cause of action has been stated is determined by the averments of the petition, and the petition is not affected by defects in the averment of the affidavit or by irregularities in the bond."

In First Nat. Bank of Pond Creek v. Vernon Cochran, 17 Okla. 538, it was said:

"In an action of replevin, where both an affidavit and a petition or bill of particulars was filed, the office of the affidavit ceases when the property is delivered and jurisdiction conferred, and the action thereafter proceeds upon the petition. The affidavit is not a part of the pleadings in the district court, necessarily, and the facts set forth therein form no part of the issues triable there, unless such facts are again set forth in the petition or other pleadings."

Allegations of value, or of amount of damages, shall not be considered as true by a failure to controvert them. Section 4779, Rev. Laws 1910; City of Guthrie v. T. W. Harvey Lbr. Co., 5 Okla. 774. In 34 Cyc. 149, it is said:

"The proof of the value of the property and the damages is required, although the allegation thereof in the complaint is not denied; but the value of each article need not be proved, provided there is proof of the total value."

Section 5130, Rev. Laws 1910, provides:

"If the taking of an account, or the proof of a fact, or the assessment of damages, be necessary to enable the court to pronounce judgment upon a failure to answer, or after a decision of an issue of law, the court may, with the assent of the party not in default, take the account, hear the proof, or assess the damages; or may, with the like assent, refer the same to a referee or master commissioner, or may direct the same to be ascertained or assessed by a jury. If a jury be ordered, it shall be on or after the day on which the action is set for trial."

The judgment herein is erroneous in another particular. Only a portion of the property taken by the sheriff under the writ was delivered to the defendants Hybarger and Alvin Cudd by reason of the re-delivery bond. What became of the balance the record fails to show. Either it was delivered to the plaintiff, or, as we have seen in the answer filed by Cudd, was replevied by John Cudd. Also the property taken by the sheriff under the alias writ, which was delivered to the plaintiff; and in addition to this, the plaintiff acknowledges that 130 head had been sold and the proceeds applied on the indebtedness. Still, the jury were directed to return a verdict for the value, as stated in the affidavit, of $5,320.

The judgment rendered finding the amount due the plaintiff upon the note is not only remarkable as to the amount, but also as to those who should pay the judgment. Plaintiff in its petition only asked for $900, and a reasonable attorney's fee taxed at $250. The note with credits indorsed thereon was in evidence. The note was for the principal sum of $4,705, maturing on October 13, 1914, and bearing interest at 10 per cent. from maturity. The credits shown are on September 19, 1914, $1,250; on October 8, 1914, $1,992.42; and on November 28, 1914, $630. At maturity, October 13, 1914, after deducting the two payments aggregating $3,242.42 and interest thereon, there was a balance of $1,451.83. Interest accruing from maturity to November 28, 1914, made the amount then due, $1,469.97, on which date the last credit of $630 was given, leaving a balance of $839.97. Interest on this balance from the date of the last payment to the date of the judgment, September 22, 1916, amounted to $152.83, making the amount of principal and interest due at the time of the judgment, $992.80. No evidence was introduced on the question of attorney's fee, nor did the court make any finding or judgment fixing any amount as attorney fees, but rendered judgment against not only A. G. Cudd, the mortgagor, and the only party who had executed the note and mortgage, but also against Homer Hybarger and Alvin Cudd for the lump sum of $1,762. This court could very easily calculate the amount due on the note, and judgment would be rendered here in favor of the plaintiff against A. G. Cudd, were it not for the fact that we have no way of ascertaining the value of the property delivered to the plaintiff under the alias writ of replevin, nor are we authorized to arbitrarily say what would be a reasonable attorney's fee.

The judgment of the trial court is therefore reversed and the cause remanded for further proceedings not inconsistent with the opinion herein.

All the Justices concur except HARRISON and McNEILL, JJ., absent and not participating.