## FT. DEARBORN TRUST & SAV. BANK et al. v. SKELLY OIL CO.

No. 19067. Opinion Filed April 29, 1930.

Rehearing Denied Dec. 16, 1930.

Hulette F. Aby, William F. Tucker, Carroll J. Lord, and Ashcraft & Ashcraft, for plaintiffs in error.

Alvin F. Molony, Cliff V. Peery, Chas. Hill Johns, F. E. Riddle, W. P. Z. German, and C C. Herndon, for defendant in error

EAGLETON, C. Skelly Oil Company brought suit against Globe Oil Company and Fort Dearborn Trust & Savings Bank and Frank M. Forrey, trustees, and others to compel specific performance of a contract it made with Globe Oil Company, to compel conveyance of clear title to the oil and gas leases involved. The Fort Dearborn Trust & Savings Bank and Frank M. Forrey, as mortgage trustees, filed cross-petition to foreclose their mortgage, a deed of trust, which covered the leases. Thereafter many changes in position and pleading took place as will more fully hereinafter appear. From the judgment both the trustees and Skelly Oil Company appeal.

This litigation grows out of an investment bubble. A $2,000,000 loan was placed on certain supposedly valuable oil and gas properties of the Globe Oil Company. The Fort Dearborn Trust & Savings Bank and Frank M. Forrey were made trustees in the deed of trust. The bonds were floated to the public. The Globe Oil Company has gone into bankruptcy. The Fort Dearborn Trust & Savings Bank was liquidated. Some of the officers of the Globe Oil Company have gone through bankruptcy, some of them are dead. This suit is a fight over certain of the remaining assets with which to wipe out partially some of the nearly if not fully $2,000,000 loss suffered by the owners of the Globe Oil Company bonds.

The Skelly Oil Company, before the bubble broke, went into the possession of certain leases covered by the deed of trust under a contract of purchase entered into between it and the Globe Oil Company, and collected from the production from these leases sums of money. The suit as tried and as it comes to this court involves only a fight for this money.

When the case was tried in the lower court, the following issues were joined: The Fort Dearborn Trust & Savings Bank and Frank M. Forrey, hereinafter called mortgage trustees, had a mortgage on the leases involved given to secure the bond issue of $2,000,000, which they claimed to be a first and superior lien thereon, the terms of which had been breached by the defaults of the Globe Oil Company, and prayed a foreclosure and sale to liquidate the bonded indebtedness. The Skelly Oil Company alleged its contract of purchase, and that the mortgage trustees were bound by the terms of the sale and estopped from asserting priority thereto, and that, due to the failure to make delivery of title to the leases free and clear for a long period of years, to wit, from the date of the contract, which was February 17, 1920, to February, 1925, at which time the election on the part of Skelly Oil Company was made and the cause tried, it would elect to abandon the claim for specific performance of the contract. It tendered into court the gross receipts from the oil runs made while the properties were operated by it less all actual expenses incurred in the operation of the property from which runs were made and less the sum of $250,000 together with interest thereon at the rate of eight per centum per annum from the date paid as in the Globe-Skelly contract provided. The mortgage trustees denied that they were bound by the Globe-Skelly contract or their lien subject to it. The trustees in bankruptcy for the Globe Oil Company were in the case in the trial court, but are not involved in this appeal.

After trial to the court without a jury, decree of foreclosure was rendered in favor of the mortgage trustees, and the properties ordered sold to liquidate the obligations by them represented in the sum of $1,955,131, together with trustees' fees in the sum of $2,000, attorney's fees in the sum of $55,000 and foreclosure sale was ordered. The court further decreed that the mortgage trustees had a valid lien and were entitled to the proceeds of the sale of oil and gas produced from said premises from August 5, 1920, the date on which in this cause at the instance of the mortgage trustees a receiver for the properties was appointed until August 1, 1922, on which date the properties were by the Skelly Oil Company turned over

to the receiver, less the reasonable cost of producing and marketing the same and less such credit as might be adjudged and allowed on accounting to be due the Skelly Oil Company for the sum it had paid on its purchase contract, and entered a judgment against the Skelly Oil Company therefor, and decreed an accounting with the Skelly Oil Company to effectuate this portion of the decree. After the foreclosure sale the mortgage trustees amended their pleadings and added to their complaint against the Skelly Oil Company the contention that the Skelly Oil Company was from and after the appointment of a receiver for the properties on August 5, 1920, a willful trespasser on the premises and not entitled to credit for operating expenses incurred after that date. To sustain this contention they asserted that the Skelly Oil Company, by appealing to the Supreme Court the order denying its application to the trial court to have the appointent of a receiver vacated and superseding by bond the court's orders and retaining possession of the properties, was a willful trespasser. They asserted further that if it did not on August 5, 1920, become a willful trespasser, it became such after the Supreme Court had finally sustained the trial court on said appeal on September 13, 1921. That the application of the Skelly Oil Company to the trial court, after the mandate of the Supreme Court had been filed in the trial court, to be allowed to substitute a bond for faithful and economical operation of the premises in lieu of operation by the receiver, the denial thereof by the trial court, and the abortive appeal therefrom, by means of which Skelly Oil Company continued in possession of the premises until the second denial of relief to the Skelly Oil Company by the Supreme Court, constituted willful trespass. The Skelly Oil Company acknowledged liability for the overplus by it received from oil runs after deducting its operating expense, including overhead, and the sum of $250,000 by it on the purchase price paid plus interest at eight per centum. On issues joined further hearing and accounting was had, and judgment entered thereon under date of July 25, 1927. The receipts and expenses were agreed and presented to the court by stipulation. It was not agreed that the Skelly Oil Company was entitled to any operating expense. Nor was it agreed that, in case Skelly Oil Company was entitled to operating expenses, it should be entitled to that portion thereof designated as overhead expenses which sums were by Skelly Oil Company claimed as the reasonable proportionate part of the general office and administrative expense of the company which could not be reasonably isolated from the general administrative, record keeping and supervisory expense to which the company is by necessity put in carrying on all of its general operations. Skelly Oil Company claimed this cost as part of its necessary and proper expense in operating the properties. On the basis of the Skelly claim it was stipulated as to the amount to which it would thereunder be entitled, should the court allow the charge as a proper deduction up to the date of the appointment of the receiver as well as up to the date the possession of the properties was relinquished by Skelly Oil Company. The trial court then entered its final judgment, from which this appeal is taken, holding that the Skelly Oil Company had acted in good faith and holding that the mortgage trustees were bound by the Globe-Skelly contract and giving judgment against Skelly Oil Company for the sums received from the oil runs less the operation expenses, including the charge for overhead up to the date of the appointment of the receiver excluding the overhead charge subsequent to the date of the appointment of the receiver on August 5, 1920, less the $250,000 with interest at eight per centum per annum as provided in the Globe-Skelly contract, and allowed the mortgage trustees simple interest at six per centum on the net amounts thus by the court found to be due the mortgage trustees from the dates said overplus sums were received by Skelly Oil Company.

The mortgage trustees under their several assignments of error make the contention that the trial court erred in allowing Skelly Oil Company to retain any of the proceeds of the oil runs received by it after the appointment of the receiver on August 5, 1920, for the reasons: (a) The deed of trust did not empower the trustees, under the facts then existing, to approve or ratify the Globe-Skelly contract; (b) that if such power were given the mortgage trustees they, the trustees, neither formally nor actually approved or ratified the contract, neither did they do anything which would estop them from denying such approval or ratification; (c) that the equities and legal rights of the mortgage trustees and their cestuis que trustents are superior to those of Skelly Oil Company; (d) that Skelly Oil Company was a willful trespasser in retaining possession of the properties subsequent to the date receiver was appointed; (e) that the Skelly Oil Company at least became a trespasser subsequent to September 13, 1921, the date

on which its first appeal to the Supreme Court was finally denied.

The Skelly Oil Company complains that it was not allowed its full operating expenses, to wit, overhead expenses from the date of the appointment of the receiver, and that it is being penalized by being charged interest on funds which it has and holds for the mortgage trustees which the mortgage trustees have refused and continue to refuse to accept in settlement of this controversy.

We will first consider whether the mortgage trustees had the power to approve or ratify the Globe-Skelly contract. The deed of trust provides, in substance, that the trustees shall represent the bondholders in all matters, except that payments on the bonds can be made direct to the bondholders by the Globe Oil Company, and the bondholders can, as was done in this case, by a certain percentage of them making written demand on the trustees, require them to take definite steps to protect the interests of the bondholders against the delinquent company issuing the bonds. This, though it was the duty of the trustees and they had the power to proceed against the company issuing the bonds, to protect the bond security without such demand. and no one person or group of persons or companies had such power save and except through the mortgage trustees. The deed of trust further provides that the trustees thereunder shall in no wise be liable to any person, bondholder or otherwise, for their mistakes or failures to perform their duties thereunder except for "willful misconduct or gross negligence." Some eight pages of the record are taken up with that portion of the deed of trust providing for the protection of the trustees from their own negligence and mistakes. Among other provisos it appears that the trustees are not at their peril compelled to take notice of any default under the terms of the trust until they shall have been given written notice thereof, and "in the absence of any such notice, the trustees may for all purposes of this indenture conclusively assume the company is not in default hereunder." The trust deed further provides that, under certain circumstances, the trustees may take charge of the properties and operate them, may sell or release the property, or any portion thereof, on such terms as they may deem proper without being liable for mistakes of judgment therein. It otherwise provides for release of leases held by the company on receipt by the trustee of resolution of the board of directors of the company that same are no longer required by the company. It further provides that no purchaser at a sale made by the company with the consent of the trustee shall be under any obligation to ascertain the occurrence of the event in which such sale is authorized under the terms of the trust deed, or to look to the application of the proceeds of such sale. In arriving at the powers granted by the instrument, no single provision may be taken and applied to the exclusion and disregard of other terms and the general purport of the whole deed. Each and every provision thereof must, if possible, be given consideration to effect the stated and apparent purposes of the makers of the deed. Kansas City Bridge Co. v. Lindsay Bridge Co., 32 Okla. 31, 121 Pac. 639.

Viewing the deed of trust as a whole, the purposes of the instrument and the powers vested by it in the trustees, they, the trustees, would and did have authority to release from the deed of trust the property bought by Skelly Oil Company from the Globe Oil Company and to consummate a sale of a portion of the corpus of the trust from the Globe Oil Company to the Skelly Oil Company, and it, the Skelly Oil Company, would not be compelled to look beyond the authorization of the mortgage trustees, and would not be required to examine behind the authorization of the trustees to ascertain whether they were faithfully performing their obligations under the powers and obligations placed on them by the deed of trust, nor would it be required to follow the distribution of the funds by it paid and see that the trustees faithfully performed their obligations.

The trial court found from the evidence that the mortgage trustees were bound by the Globe-Skelly contract, and, under the terms of the contract, Skelly Oil Company was entitled to reimbursement from the proceeds of the oil runs while it operated the properties and $250,000 with interest thereon in preference to the mortgage trustees.

The evidence made it appear that the deed of trust was made to the mortgage trustees to secure a $2,000,000 bond issue. Part of the trust property was in Louisiana, the balance in Oklahoma. It consisted of both producing and nonproducing properties. Some of the nonproducing properties were not in proven territories. All of the bonds appear to have been sold. Payments under the terms of the trust were made with fair regularity until the fall preceding the making of the Globe-Skelly contract. The trustees repeatedly pressed the Globe Oil Company, endeavoring to cause it to avoid making default in the terms of the deed of trust.

The president of the Globe Oil Company, an associate if not a partner in a financial association in Chicago, which aided in putting the Globe bonds on the market, lived in Chicago, and had his office with his associates in the securities brokerage business. He was in touch with the mortgage trustees in Chicago almost daily when in town. He kept them advised as to the condition of the Globe Oil Company and its business. He, as well as the general office of the Globe Oil Company at Tulsa, explained to the trustees and excused the company's continued financial straits and delinquencies. Bad weather in Louisiana interfered with their drilling operations, and caused them to be unable to market oil they could produce; one of their best wells, with 4,000 barrel daily production, went to water, but optimism prevailed. Substantial obligations of the Globe Oil Company, under the terms of the deed of trust, went into default on February 15, 1920. On February 17, 1920, Barnes from Tulsa called McClellan, the trust officer of the corporate mortgage trustee, Fort Dearborn Trust & Savings Bank, over the telephone, and asked concerning the terms of release of the Oklahoma properties on a sale, and, according to positive affirmative evidence, reported back that it was acceptable to the trustee to release on the terms agreed if $200,000 were that day paid to the trustee, that being substantially the amount the Globe Oil Company was on that date delinquent with the trustee. Skelly Oil Company paid $250,000 in cash on that date, and, as agreed, $200,000 was that night by telegram sent to the corporate trustee and $50,000 was that night sent to Louisiana to be applied on Globe Oil Company obligations. The Fort Dearborn Trust & Savings Bank received the money and made almost immediate disbursement of the money. Less than $50,000 remained on hand on February 21, 1920, the day Barnes returned to Chicago and disclosed to McClellan the full details of the transaction. Both Barnes and McClellan denied the above suggested purport of their telephone conversation, but testimony was introduced that the results of this conversation were so disclosed by Barnes to Skelly Oil Company before the contract was signed and the money paid. A telegram was sent by McClellan to Globe Oil Company, or Mr. Barnes, immediately after the telephone conversation advising that the trustees would release the mortgage on receipt of the sale price of the property, and in compliance with a certain section of the deed of trust. Barnes testified he showed this telegram to Skelly and his attorney before the deal was closed. Skelly and his attorney denied that they saw or heard of the telegram. The telegram advising the corporate trustee of the transmittal of the money said the money was for the "sinking fund" of the Globe Oil Company. Also a notation on the money received for deposit carried the same instruction. Who caused this instruction to be given and notation made does not appear. The telegram, as well as the money, was sent to Chicago by the Union National Bank of Tulsa. The mortgage trustees contend they relied on these instructions in the use to which they put this money. After full disclosure of the facts at the meeting between McClellan and Barnes on February 21, 1920, and again between Barnes and other members of the board of directors of Globe Oil Company and the president, trust officer and attorney of the corporate trustee, on February 23, 1920, it was determined that the corporate trustee would have the valuation of the properties of the Globe Oil Company included under the deed of trust inquired into. The balance of money in the hands of the corporate trustee was not held for, or returned, or tendered to Skelly Oil Company. The mortgage trustees refused to recognize the Globe-Skelly contract further. The Louisiana properties were lost to prior liens and claims, and no recovery was made therefrom by the mortgage trustees, it being determined there was no equity over and above the superior liens. The Globe Oil Company was put through bankruptcy. And so far as the record discloses, the small amount of money in the hands of the corporate trustee, the net balance of funds in the hands of the receiver, who finally sold these properties, and the money in the hands of Skelly Oil Company is all that remains to liquidate the claims of the remaining holders of the Globe Oil Company bonds; hence this fight.

The mortgage trustee had sufficient information of the source of the $200,000 received from Tulsa on the morning of February 18, 1920, to put it on notice that it was money received from a sale of a portion of the trust estate. It, in disregard of the terms of the deed of trust, made disbursement thereof contrary to its provisions. It cannot hide behind the instructions of transmittal. If the bondholders had been willing to take the Globe Oil Company responsibility for the obligations they took, there had been no need of a deed of trust or a trustee or of specific instructions in the deed of trust as to the placement and disbursement of funds received by the mortgage trustee from certain sources.

From examination of all the evidence, we

conclude that the finding of the trial court that the mortgage trustee was bound by the Globe-Skelly contract is reasonably supported thereby.

The mortgage trustees make no claim to and have no right to the profits prior to receivership. New York Security & Trust Co. v. Saratoga Gas & E. L. Co., 159 N. Y. 137, 45 L. R. A. 132; The Galveston, H. & H. Rd. Co. v. Cowdrey, 11 Wall. 459, 20 L. Ed. 199; Gilman v. Telegraph Co., 91 U. S. 603, 23 L. Ed. 405; American Bridge Co. v. Heidelbach, 94 U. S. 798, 24 L. Ed. 144; Freedman Co. v. Shepherd, 127 U. S. 494, 32 L. Ed. 163; Teal v. Walker, 111 U. S. 242, 28 L. Ed. 415.

The Skelly Oil Company repaid itself the $50,000 paid in protecting the Louisiana properties, or for whatever purpose it was used out of the first monies it received as it had a right to do even if the Globe-Skelly contract were not enforceable. Southern Surety Co. v. Corbit, 142 Okla. 103, 285 Pac. 949.

One who accepts the benefits of a contract, even if previously unauthorized, with knowledge, or notice which would put him on inquiry as to the facts which could be ascertained, is as firmly bound by the contract as if he had entered into the original agreement. C. O. S. 1921, sections 5013, 3540. The bondholders at all times had beneficial interests in the mortgaged property subject to their representation by the mortgage trustees, their rights under the terms of the deed of trust. The deed of trust empowered the trustees to represent the interests of the bondholders. If loss befalls these bondholders, it is by reason of being misled as to the character behind the bond issue, as to the character of physical assets securing the issue, or negligence of the trustees in protecting their interests. The trial court found the Skelly Oil Company to be in good faith in the transaction. The evidence reasonably tends to support this determination. Under the provisions of the trust deed, had the trustees executed the release, no question of the facts attending or preceding its execution could, in the absence of fraud, have been inquired into. How, then, can these facts be inquired into when the release is by estoppel enforced? Cudd v. Bank, 76 Okla. 317, 185 Pac. 521; Wade v. Cornish, 23 Okla. 40, 99 Pac. 643; Emerson-Brantingham Implement Co. v. Faulkner (Kan.) 241 Pac. 431; Spargo v. Nelson (Utah) 37 Pac. 495; Ayres v. McConahey (Neb.) 91 N. W. 494; Hicks v. Ross (Tex.) 9 S. W. 315; Field v. Doyon (Wis.) 25 N. W. 653. In which last-cited case, it quotes with favor:

"In like manner, if one, without actually inducing another to act in a particular way, assent to the thing done, and seek to derive a benefit from it, he cannot, in case of disappointment, repudiate the validity of the act assented to."

Looking back over the full developments in these transactions and this suit, it appears now that the mortgage trustees would have been wise to have accepted the benefits of the Globe-Skelly sale and allowed it to be consummated before the change in condition caused the Skelly Oil Company to abandon its claim for specific performance, which, under the facts and conclusions reached by the trial court, would have been ordered, and ask for its reimbursement of "all actual expenses incurred in the operation of the property from which oil runs are made" and of the cash payment by it made with interest as in the Globe-Skelly contract provided. Skelly Oil Company in good faith endeavored to fulfill its contract and consummate the purchase of the properties. It was kept from so doing by the mortgage trustees and the bankruptcy proceeding of the Globe Oil Company for a number of years until conditions had so changed that it abandoned its efforts to effectuate its title, and claimed and is now claiming only to be made whole as to expenses and reimbursement with interest of the money it paid on the attempted purchase. No issue is here made of the right of Skelly Oil Company to choose a different horn of the bifurcated contract which it entered into from the one they, in the commencement of this suit and for nearly five years thereafter, endeavored to enforce.

The appointment of a receiver in the cause was auxiliary to the main action and cross-action. The order was interlocutory and not a final judgment as to the rights and equities of the parties. It is true the interlocutory orders of appointment and refusal to vacate the appointment were brought to this court for review and were by this court sustained, yet no adjudication as to the ultimate rights of the parties was or could have been had therein. By special statutory provisions, such orders are reviewable on appeal, and the parties are not relegated to a delay until final judgment to possess the court of the property in controversy. Interlocutory orders by the court made are not binding on the trial court in arriving at and entering final judgment in a cause. Wells v. Shriver, 81 Okla. 108, 197 Pac. 460, 10 R. C. L. pp. 559 et seq.; Hebblethwaite v. Flint, 82 N. Y. S. 471; Pickens v. Daniels (W. Va.) 52 S. E. 215; Hannah v. Charleston National Bank (W. Va.) 44 S. E. 152; Alabama

Hotel v. Mott Iron Works (Fla.) 98 So. 825; Brannon v. Wilson (Tex. Civ. App.) 260 S. W. 201; Hurt v. Hurt (Ala.) 47 So. 260; Woodcock v. Parker, 35 Me. 138; Salyer v. Arnett (Ky.) 62 S. W. 1031; Webb v. Buckelew, 82 N. Y. 555. Herein, the mortgage trustees in the receivership proceeding showed prima facie claim with probability of loss unless the properties were sequestered in the hands of the court and operated by a receiver. On final judgment it was determined that the rights of the Skelly Oil Company were at all times, from the commencement of these proceedings —and by admission of the mortgage trustees they had no adverse claim prior to appointment of a receiver—superior to those of the mortgage trustees. By stipulation, it appears the operation of the properties was proper and economical. How, in equity, can a claimant under an inferior lien demand more of the holder of a superior lien? We believe and so hold that no further rights inhere in the holder of the inferior lien, the mortgage trustees herein, that to the surplus of funds in the hands of Skelly Oil Company.

The Skelly Oil Company was rightfully and peacefully in possession of the premises originally involved in this case at the time the suit was filed. It unsuccessfully attacked certain interlocutory orders entered. On final adjudication, it was held Skelly Oil Company acted in good faith and that its rights were superior to those of the mortgage trustees. Parties to litigation do not ordinarily at their peril exercise those rights and privileges afforded them by statute to test the correctness of an order of a judicial tribunal by appeal. Skelly Oil Company was by the trial court held not be a willful trespasser. This portion of the decree is reasonably sustained by the evidence. Sapulpa Petroleum Co. v. McCray, 136 Okla. 269, 277 Pac. 589.

Now, as to the so-called overhead expense item subsequent to the appointment of a receiver, the trial court held it an improper charge. However, the only rights allowed the Skelly Oil Company were those it had under the Globe-Skelly contract. By the contract Skelly Oil Company was entitled to all actual expenses incurred in the operation of the properties. If the overhead expense was not an actual expense incurred in operating the properties, under no theory advanced in the cause or appearing to this court could Skelly Oil Company be allowed this purported item of expenses for any period. All this company was and is entitled to in its accounting is reimbursement to the extent of its actual operating expenses, and the refund of the cash payment by it

made plus interest thereon. No complaint is here made that this charge was allowed to August 5, 1920. Observation would force one to conclude that it is an accepted custom in substantial affairs of all character, where numerous personnel is required to carry on the work or business, to keep records and to have supervisory and administrative staff to direct and co-ordinate the work. This being an accepted business policy, we could not say, as a matter of law, that such expense is unnecessary or unreasonable. The only question left us is the reasonableness of the charge itself. The reasonableness of the allowance made for the period was not controverted by evidence. It, from the evidence, appears to be reasonable. By stipulation the amount of this charge is made certain if this charge and rate of charge is allowed for the entire period of the Skelly Oil Company operation.

The overhead expenses of the Skelly Oil Company for the period it operated the properties should be allowed it as a portion of its actual expenses. New Domain Oil & Gas Co. v. McKinney (Ky.) 221 S. W. 245.

This leaves but the question of the interest charged against Skelly Oil Company on the net balance, determined after many years of litigation, to be due the mortgage trustees, from the dates said net surplus came into the hands of the Skelly Oil Company.

Prior to February, 1925, when the Skelly Oil Company abandoned its plea for specific performance, mortgage trustees could have enforced no claim to any money then in the hands of Skelly Oil Company. Neither could it have collected interest on any sum if later it were determined to be due. Miller v. McDonald, 63 Okla. 167, 163 Pac. 533. No question is raised as to the right of that company to change its demands under the terms of the contract. The mortgage trustees denied the right of Skelly Oil Company to have its contract with the Globe Oil Company in any wise enforced as against them, and went to trial on that issue. After judgment went against them on this feature of the case, they amended to claim that Skelly Oil Company had, after the appointment of a receiver by carrying on its legal fights and retaining possession of the property for almost two years, become a willful trespasser, and was entitled to none of its operating costs. On final trial the court decreed that mortgage trustees were bound by the Globe-Skelly contract, which determination is reasonably sustained by the evidence. The contract provided for full reimbursement to the Skelly Oil Company in case the sale

were not completed. A tender of payment to the mortgage trustees was made at the time the Skelly Oil Company abandoned its efforts to obtain specific performance. It is true there was not an accurate and correct amount of money tendered, but same was not accepted and the refusal was not founded on the inaccuracy of the tender, but for the reason the mortgage trustees endeavored to get all of the property and proceeds from the oil runs free and clear of the Globe-Skelly contract obligations. Failing in that effort, the mortgage trustees reached an agreement with Skelly Oil Company outside of court as to the amounts received and disbursed and held by Skelly Oil Company. The only questions submitted to the court in the accounting was whether the Skelly Oil Company was entitled to reimbursement of the cash payment it had made, whether the so designated "overhead" charges were deductible as actual expenses and whether Skelly Oil Company was liable for interest on the net balance then found to be due from the dates the court should find the Skelly Oil Company had a net amount of money on hand after liquidating its claims. The several amounts were stipulated in either event. These items are unliquidated until the basis of their computation is finally determined pursuant to this opinion. The contentions of the mortgage trustees, even to now, has been such that no payment could have been made by Skelly Oil Company and a settlement had; litigation has at all times been pending, not on the amount due from Skelly Oil Company over and above its operating expense and the refund to which it was entitled alone, but primarily whether or not Skelly Oil Company was entitled to any refund credit. C. O. S. 1921, sec. 5972; Rupard v. Rees, 94 Okla. 49, 220 Pac. 893; C. O. S. 1921, sec. 5105; Krauss v. Potts, 53 Okla. 379, 156 Pac. 1162; Schaff v. Hudgins, 96 Okla. 173, 221 Pac. 90.

Having disposed of all questions material to the determination of this cause, it is remanded, with instructions to enter judgment against the Skelly Oil Company for the gross proceeds received from the oil and gas runs from the properties while operated by the Skelly Oil Company less the operating expense of the Skelly Oil Company as stipulated in the cause, including the overhead expense for the period of its operations, and less the $250,000, together with interest at eight per centum from February 17, 1920, until Skelly Oil Company had net funds in hand to liquidate these claims, and to allow mortgage trustees interest from this date. Reversed and remanded, with directions.

BENNETT, DIFFENDAFFER, FOSTER, and HERR, Commissioners, concur.

HALL, Commissioner, absent.

HUNT, J., having acted as trial judge in some of the proceedings involved in this appeal, disqualified and not participating.