## SAVE SALES CO. OF TOLEDO, OHIO, et al. v. FUTRAL.

No. 27091.     May 25, 1937.

Rogers & Stephenson and Q. M. Dickason, for plaintiffs in error.

A. C. Saunders, for defendant in error.

OSBORN, C. J.     This action was commenced in the district court of Tulsa county by A. C. Futral, hereinafter referred to as plaintiff, against the Save Sales Company, hereinafter referred to as defendant company, and G. A. Simon and C. H. Norton, hereinafter referred to as defendants. Plaintiff alleged that, as a representative and agent of the defendant company, he had established a profitable business which had been converted by defendants to their own use and benefit.     Plaintiff sought recovery of actual and exemplary damages. Issues were joined, the cause was tried to a jury and a verdict was returned in favor of plaintiff for $2,000 actual damages and $1,750 exemplary damages.     From a judgment on the verdict, defendants have appealed.

It is urged by defendants that the trial court erred in overruling a demurrer to plaintiff's evidence and in refusing to direct a verdict in their favor at the close of all the evidence.

Plaintiff's evidence is to the effect that on June 19, 1934, he entered into an oral

contract with the defendant company whereby he became its agent, representative, and distributor in the state of Oklahoma and adjoining states; that said company was engaged in the business of handling and selling electric lamps and globes to wholesale and retail trade; that he opened and operated a place of business in Tulsa, Okla., under the trade name of Save Sales Company of Oklahoma; that he employed a number of salesmen to solicit orders for the products of the company; that by his diligent efforts and the expenditure of approximately $2,700 of his own money he had built up a successful distributing business which had increased from month to month; that he had been commended by the company on numerous occasions for his success in distributing its products; that his net profits for approximately ten months in which he was in business amounted to $2,813.53; that he had secured numerous contracts to supply the needs of various concerns using large quantities of electric lamps, and had been promised other lucrative contracts. Plaintiff further testified that on April 15, 1935, a company bulletin showed that he was listed as one of the outstanding jobbers of the company; that about this time he had received a company bulletin giving notice that his discount had been reduced, and that he wrote a letter of complaint; that on April 29th, defendant C. H. Norton, a representative of the company, called on him and told him the company was dissatisfied with his services and demanded payment in full for goods shipped to plaintiff on consignment; that an inventory was prepared showing the amount of the indebtedness, which plaintiff contended was incorrect; that Norton insisted that plaintiff sign it, otherwise the company would prosecute him for a violation of certain purported federal laws relating to consignments of merchandise; that to avoid such prosecution plaintiff signed the inventory, although protesting against its correctness, and signed a promissory note to the company in the amount of the purported indebtedness and agreed that certain accounts receivable be set off against the note as they were collected; that arrangements were made by Norton for defendant G. A. Simon to take over the business with the understanding that plaintiff was to be a partner in the business and have charge of sales and receive one-half of the net profits of the business; that Simon left the business in charge of one R. J. North, who proceeded to operate the business for him under the trade name established by plaintiff and at the same location, using plaintiff's furniture and office equipment; that on May 12, 1935, plaintiff was discharged and has been unable since that time to reestablish himself in business.

The witnesses were examined in detail regarding the various transactions involved herein and the record is voluminous. We will not burden the opinion with the recitation of other facts. The above outline of the evidence discloses the theory upon which plaintiff sought recovery. Summarizing, it may be said that plaintiff's evidence was to the effect that on April 29, 1935, he was in charge of a prosperous growing business; that approximately two weeks later, as a result of the fraudulent scheme perpetrated by defendants, they were in charge of the business established by his effort and he was without interest or employment therein.

There was a sharp conflict in the testimony on the material issues. The evidence of defendants was to the effect that they were guilty of no improper conduct; that the transfer of the business was the result of open negotiations between the parties, and that plaintiff with full knowledge and understanding of all the details gave assent and approval thereto and that such assent and approval constituted an absolute bar to recovery. The jury was instructed that:

"* * * Consent in law is more than a mere formal act of the mind. It is an act unclouded by fraud or duress, and if you find from a preponderance of the evidence that the plaintiff allowed or consented that the defendants possess themselves of his personal property and place of business, but that such consent or agreement was obtained through fraud, threats, false representations or duress, then and in that event should you so find, such consent or agreement would not be binding in law and any person acting or carrying on under a consent thus obtained would be doing so without right, and you are further instructed that any person or persons obtaining property of another by false representations or fraudulent device or undue influence is guilty of conversion thereof. * * *"

A demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences and conclusions which may be reasonably and logically drawn from the evidence, and upon demurrer to the evidence

the plaintiff is entitled to every inference which the evidence, considered in the light most favorable to him, reasonably tends to prove. Wright v. Clark, 177 Okla. 628, 61 P. (2d) 192.

It is only when the evidence, with all the inferences the jury could justifiably draw from it, will be insufficient to support a verdict for plaintiff that the court is authorized to direct a verdict for the defendant; and, unless the conclusion follows, as a matter of law, that no recovery can be had upon any view that can be properly taken of the facts which the evidence tends to establish, the case should be left to the jury under proper instructions. Morris v. McLendon, 167 Okla. 68, 27 P. (2d) 811.

Under the pleadings and evidence in this case there was involved a controversial issue of fact as to whether plaintiff's consent to the transfer of the business was improperly obtained. In the light of the evidence on this point, the court did not err in submitting such issue to the jury under proper instructions.

Complaint is made of the instructions to the jury in that the trial court used the words "fraud," and "duress," but failed to define the meaning of such words. No request was made for more definite and specific instructions on the issues of fraud and duress. It is the well-settled rule in this state that if the court's charge be not sufficiently full, or sufficiently specific, it is the duty of the party who considers himself aggrieved thereby, to request fuller or more specific instructions from the court, and if he fails to do so, there is no basis for an assignment of error to the giving of such instructions. The saving of exceptions thereto will not suffice, not being equivalent to a request for a fuller or more specific instruction. Missouri, O. & G. Ry Co. v. Collins, 47 Okla. 761, 150 P. 142; International News Service v. News Publishing Co., 118 Okla. 113, 247 P. 87, 91; Societe Titanor v. Sherman Machine & Iron Works, 172 Okla. 213, 45 P. (2d) 144. After examination of the instructions and considering them as a whole, it appears that the issues were fairly and clearly presented to the jury in such manner that they could not be misled. It must clearly appear that the instructions complained of probably caused a miscarriage of justice before a reversal will be ordered. Thompson v. Vaught, 61 Okla. 195, 200, 160 P. 625; Kingham v. Capps, 100 Okla. 269, 229 P. 224.

After all the evidence was introduced and the case closed, defendants requested permission to reopen the case for introduction of additional evidence. The refusal of said request is assigned as error. Such request is addressed largely to the discretion of the trial court. Potts v. First National Bank of Durant, 143 Okla. 140, 287 P. 1003. An examination of the evidence offered by defendants discloses that the trial court did not abuse its discretion.

It is the further contention of defendants that the verdict is so excessive as to indicate passion and prejudice on the part of the jury, and either the cause should be reversed for this reason or a substantial remittitur should be ordered. The evidence is sufficient to sustain the award of the jury for actual damages, but the contention of defendants regarding the item of exemplary damages is meritorious. The imposition of a fine or penalty against the defendants in this case in the sum of $1,750 is not justified by the evidence, and is clearly excessive. We quote from the body of the opinion in the case of Stoner v. Wilson (Kan.) 36 P. (2d) 999, 1006, as follows:

"In 8 R. C. L. 680, it is said:

"'It is difficult to lay down any rule by which to test the question of excess in a verdict for punitive or exemplary damages. At common law the amount was left almost entirely to the jury, and the courts generally refused to grant a new trial on the ground that the award was excessive, and wou'd do so only in a glaring case of outrageous damages, and which all mankind at first blush must think so. It is now generally held, however, that the jury is not at liberty, unrestrained, to award by way of punitive damages any amount, regardless of how large it may be. While their verdict will not be set aside unless it is so large as to satisfy the court it was not the result of an honest exercise of judgment, an award of exemplary damages is subject to revision by the court to the same extent as awards of compensatory damages, and will be set aside if it is grossly excessive or appears to be the result of passion or prejudice or improper sympathy. The court will not interfere except in extreme cases, however, and where it appears that an injustice has been done, and, perhaps, will proceed with more caution in such a case than where only compensatory damages are involved.'"

We are of the opinion that the judgment of the trial court should be modified by requiring a remittitur of punitive damages in excess of $750, reducing the total of

148

said judgment to $2,750, together with interest at the rate of 6 per cent. per annum from the date thereof, as provided by said judgment, and if such remittitur is filed in ten days from the date the opinion herein becomes final, the cause is affirmed at the costs of the plaintiffs in error; otherwise the cause is reversed at the cost of defendant in error.

BAYLESS, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur.