## CITY OF MANGUM v. BROWNLEE.

No. 27685.    Jan. 11, 1938.

516

W. T. Jeter, for plaintiff in error.

Robinson & Oden, for defendant in error.

HURST, J. A bear, belonging to the city of Mangum, bit Earl Brownlee on the leg. and he sued for damages. The undisputed facts are substantially as follows: The city owned a park in which it maintained a swimming pool and a small zoo. The bear's den was just north of the swimming pool and consisted of a pit enclosed by a rock wall. The wall surrounding the pit extended about two feet above the ground. The only entrance to the den was by way of an underground passage leading from the inside of the bathhouse adjacent to the pool.

The bear escaped from its den and was caught by a visitor in the park by the name of Bill Bolen, who was a friend of the bear, since it was a "little bitty fellow." Bolen had no connection with the city, but just happened to be there at the time. Bolen attempted to push the bear back over the wall into the den, but when the bear snapped at him, he led it into the bathhouse to take it through the passageway to the den. Plaintiff had purchased a ticket to the pool, had taken a swim and was standing in the bathhouse waiting for his clothes. As Bolen led the bear into the bathhouse, it grabbed plaintiff's leg with its teeth and held on for several minutes, being beaten off with a hammer.

Plaintiff was treated for several weeks by his family physician. It was four or five weeks after the injury before he could walk without the use of crutches. Some months later, he underwent an operation to correct what was called a hernia of the muscle in the calf of his leg. The operation again required plaintiff to use crutches for two or three weeks. The jury returned a verdict in favor of plaintiff for $1,100. From judgment thereon, the defendant city brings this appeal.

1. The defendant first contends that the act of Bolen in leading the bear to the inside of the bathhouse where it bit plaintiff was, an independent intervening act of a third party which relieved defendant of liability. For this reason it is contended that the court erred (1) in not sustaining defendant's demurrer to the evidence; (2) in not sustaining defendant's motion for an instructed verdict; and (3) in refusing to give certain instructions requested by defendant in this connection. In answer to this proposition, the plaintiff argues that the defendant, by keeping an animal of this type, is an insurer against any injury caused by it. The doctrine of absolute liability has been established in this type of case by City of Tonkawa v. Danielson (1933) 166 Okla. 241, 27 P. (2d) 348, wherein it is held that "the owner or keeper of a dangerous animal, classed as an animal ferae naturae, such as a bear, takes the risk of so keeping it that it will not injure persons invited on the premises who are in the exercise of due care." For an exhaustive annotation on the doctrine of absolute liability as applied to keepers of wild animals, see 69 A. L. R. 500. In the instant case, contributory negligence was alleged as a defense in the answer of the defendant, but it was not supported by any evidence at the trial, so the question is not involved in this appeal. The plaintiff was invited on the premises. and, while in the exercise of due care, was injured by the bear kept by the defendant. These facts establish liability. Under such circumstances the defense of independent intervening cause has no application. The act of Bolen in leading the bear back to its enclosure is one which the city had a duty to perform, and is not such intervening cause as will relieve the city from liability. 45 C. J. 933. The court instructed the jury, in substance, that the verdict should be for plaintiff if it found that defendant kept the bear and that it escaped and injured plaintiff, who was, at the time, a patron of defendant's swimming pool; otherwise, the verdict should be for defendant. The instructions, as a whole, correctly stated the law. The authorities relied on by the defendant do not deal with the doctrine of absolute liability and the court did not commit error in the particulars complained of above.

2. Defendant further contends that the court erred in refusing to reopen the case to permit defendant to introduce additional

testimony. The record discloses that on the day of the trial a subpoena was issued and served upon a doctor who was to testify on behalf of defendant. Both parties rested and the court adjourned until the next morning. That evening the doctor made an examination of plaintiff. When the court convened, counsel for defendant made oral application to reopen its case and produce additional testimony. The court denied the motion "for the reason the witness is not in court and no definite assurance given just when he will be able to be here." Thereupon the court commenced reading the instructions to the jury, and before they were completed, the witness arrived. The defendant interrupted the court and requested that the witness be allowed to testify. The court denied the request, stating that the plaintiff had lived only 27 miles away for the past two years and defendant's doctor could have made an examination of him at any time. The court then concluded the reading of the instructions to the jury. The jury retired to consider its verdict and returned shortly with the request to again examine the plaintiff's leg. At that time the defendant again asked that the witness be permitted to testify. The court in refusing the request said:

"I would have permitted that evidence, but the plaintiff had a doctor here and I saw the two doctors were going to get in an argument that would last until noon and wouldn't help the jury any. That's my reason for not reopening the case."

Counsel for defendant stated that the witness would testify, among other things, "that there was no permanent injury; that he would advise no operation be had upon the boy."

The defendant concedes that whether further evidence shall be received after a party has closed his case rests largely in the discretion of the trial court, but contends that the record shows a clear abuse of discretion. Although several reasons for denying the motion to reopen which would by themselves seem arbitrary, yet it appears that the defendant did not exercise due diligence in attempting to obtain the testimony before closing the case. If the court was justified in denying defendant's motion upon any one ground, it is immaterial what other reasons were given. It is held that the failure to use due diligence to procure the evidence justifies the court's refusal to reopen the case. Pac. Feed Co. v. Kennel (Cal. App.) 218 P. 274; Northwest Hay Ass'n v. Chase (Wash.) 239 P. 1. Moreover, the defendant could complain of no prejudice by the denial of the opportun-

ity to testify that there were no permanent injuries sustained by plaintiff, for the reason that the doctor testifying on behalf of plaintiff did not positively state that the injuries were permanent. Rather, he said he did not know, and we cannot assume that the jury considered the injuries as permanent in arriving at their verdict.

3. The defendant further contends that the verdict is excessive, but with this contention we cannot agree. Considering the extent of the injuries and the physical pain and mental anguish endured by the plaintiff, we believe the amount of the verdict was not excessive as compensation for the injuries sustained, though only temporary.

The judgment is affirmed.

PHELPS, CORN, GIBSON, and DAVISON, JJ., concur.