**OKLAHOMA CITY, a Municipal Corporation, Plaintiff in Error,**

v.

**Lynn A. HUDSON, Defendant in Error.**

**No. 40683.**

Supreme Court of Oklahoma.

June 29, 1965.

Roy H. Semtner, Municipal Counselor, Walter M. Powell, Tom B. McGee, Asst. Municipal Counselors, for plaintiff in error.

Cargill, Cargill, Chiaf, Rudkin & Cargill, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

The defendant in error, hereinafter referred to as plaintiff, filed this action against plaintiff in error, hereinafter referred to as defendant, to recover damages for personal injuries incurred in the manner hereinafter related. Plaintiff was an employee of the Oklahoma City Zoo. On the day in question he was engaged in cleaning out the pit used for housing lions. Prior to this operation he had closed the door shutting off the area where he was to work. While so working, two lions beat against the door, it opened, and the animals rushed into the place where he was working, mauling him severely. He recovered a verdict and judgment in the sum of $57,-300.00. After the overruling of its motion for a new trial, defendant perfected the present appeal.

The amended petition which plaintiff filed in this action contained general allegations of the defendant's failure to provide him a "reasonably" safe place to work and safe methods and safeguards for carrying out his duties in connection with cleaning the lion pit, and, in more detail, further alleged:

"(f) Failure of the defendant to provide safe locks and/or catches on the restraining cage where lions were kept while plaintiff was engaged in cleaning said lion pit and moat; and, in this connection, plaintiff alleges that said locks were old, rusty, worn, defective and insecure and that while plaintiff was carrying out his duties, said lions were continually scratching, pawing, lunging and biting against the restraining cage door where said lions had been placed; that as a result of said old, worn and defective lock, it gave way under the constant pressure of said lions lunging, clawing, pawing and striking at said lock and said lions escaped into the enclosure where the plaintiff was carrying out his duties. Plaintiff alleges that said old, worn and defective locks were known by the defendant or should have been known by the exercise of reasonable care and diligence on the part of defendant and that the same was wholly unknown to this plaintiff.

"V.

"Plaintiff alleges that, as a direct and proximate result of the above and foregoing acts of carelessness and negligence on the part of the defendant, said lion and lioness did escape into the pit where the plaintiff was instructed to work, inflicting upon him severe bodily injury, and that without said negligence on the part of defendant, same would not have occurred."

The evidence at the trial established that plaintiff had worked at the zoo seven or eight months prior to the accident. Plaintiff testified, in substance, that his "training" during the early days of his employment had been as a "helper" to two other employees in cleaning the "run-around" used by hoofed animals and that he had cleaned the lion pit "not more than three times" previous to the date of his injury. When he was interrogated at length about whether, on the day of the accident, he had securely locked the safety doors closing off from the pit, the part of the zoo in which the lions customarily remained, while the pit was being cleaned, plaintiff testified to the effect that the last one of the door locks was "hard to lock." When asked whether he actually latched the safety doors, he, at one point, testified: "I am not one hundred percent positive."

Despite the fact that plaintiff's petition, as above indicated, purported to state a cause of action based upon defendant's negligence, and, at the pre-trial conference it was decreed that the general nature of the case, inter alia, was "negligence of defendant", the court submitted the case to the jury on the theory of defendant's absolute liability, by giving the following instructions:

### "No. 6.

"You are further instructed that one who harbors a wild animal, such as a lion, which is by its very nature vicious and unpredictable does so at his peril, and liability for injuries inflicted by such animal is absolute.

### "No. 7.

"You are further instructed while it is not in itself unlawful for a person to keep wild beasts, although they may be such as are of a nature vicious and dangerous, as a lion, yet it is the duty of those who own or keep them to do it in such a manner as will absolutely prevent the occurrence of an injury to others through the vicious acts of the animals as they are naturally inclined to commit; and for any injury they may do to others, the person keeping them is liable, irrespective of any questions of negligence or knowledge of previous acts showing a vicious disposition.

### "No. 8.

"You are further instructed strictly speaking negligence is not an element of the owners liability, it is the keeping of a wild animal that makes him responsible for any damages.

"While any person has the undoubted right to keep a wild animal, and no one has a right to interfere with him in so doing, as a, result thereof, he assumes the obligations with respect thereto to the public generally. A person who keeps an animal such as a lion keeps it at his peril; and if he loses control of it and it does damage, he is responsible."

■ While defendant urges several grounds for reversing the order and/or judgment appealed from, it is necessary to deal only with its argument urging error in the above quoted instructions. It maintains that their common fallacy consisted of invoking the doctrine of absolute liability, while in truth such doctrine has no application to a case like the present one, where the plaintiff is defendant's employee, rather than a member of the public. Herein lies the distinction between this case and City of Mangum v. Brownlee, 181 Okl. 515, 75 P.2d 174, and City of Tonkawa v. Danielson, 166 Okl. 241, 27 P.2d 348, wherein the plaintiffs were members of the general public, not associated in any way with the care, keeping, or harboring of the animals involved. The distinction to which we allude was noted in Haneman v. Western Meat Co., 8 Cal.App. 698, 97 P. 695, 696, wherein the court said:

"While it is true that the owner of a vicious animal, who knows that such animal is vicious, should be held liable to all persons for damages caused by the vicious acts of such animal, if the

owner allows such persons to be subjected to danger without warning, yet it is not the policy of the law to make the master an insurer against accidents that may happen to an employé in the ordinary course of his employment.

&ast; &ast; &ast; &ast; &ast; &ast;

"To hold the owner of such animal liable it must be shown that such owner failed in some duty to the party injured.

&ast; &ast; &ast; &ast; &ast; &ast;."

See the comments on this case in Bowden v. Herberger, 47 Cal.App. 555, 191 P. 32, 33, the comments on the latter case in the Annotations at 66 A.L.R.2d 916, 925; and compare the statement in 2 Am.Jur., "Animals", section 43, at Note 17, with the discussion in 35 Am.Jur., "Master and Servant", section 121. See also the discussion in 37 Mich.L.Rev. 1181, et seq.

█ In this case, it is unnecessary to become involved in, or to discuss, the various differences in the opinions of various courts as to whether the usual defenses in tort actions generally, such as contributory negligence, assumption of risk, etc., apply to actions by the patrons of a zoo or other places where wild animals are kept on exhibit for amusement or educational purposes (Notice Hansen v. Brogan, Mont., 400 P.2d 265, and the Annotation at 22 A.L.R. 610, 629, and 69 A.L.R. 500) or to actions by domestic servants (notice the Annotation at 49 A.L.R.2d 317, 350, et seq.) or employees generally, who were not hired to help keep, or care for, wild animals and who might only infrequently, or casually, come into contact with them during the performance of unrelated tasks of their employment. Here, plaintiff was not a spectator at the zoo, but the undisputed evidence is that he was employed specifically to assist in caring for wild animals on exhibit there, that he had undergone an apprenticeship or "training" period, and that he had had some previous experience in working in the lion pit. There can be no doubt in our opinion but that the rules applying to master and servant cases apply here, and that

the doctrine of absolute liability has no application. The giving of the quoted instructions were the practical equivalent of an instructed verdict for the plaintiff, and constituted prejudicial error. This error was valid ground for a new trial. Therefore, the trial court's order overruling defendant's motion for such new trial is hereby reversed, and this cause is remanded to said court with instructions to set aside said order and enter a new one granting defendant a new trial.