In the matter of the **GUARDIANSHIP OF Ada Belle DURNELL**, an incompetent person.
Appeal of Mae **HARRISON** as Guardian of the person and Estate of said incompetent.
No. 41490.

Supreme Court of Oklahoma.

Feb. 28, 1967.

As Amended Nov. 3, 1967.

On Rehearing Nov. 7, 1967.

Purman Wilson, George Bingaman, Thomas G. Smith, Purcell, for plaintiff in error.

Richard James, Stroud, Henry Montgomery, Purcell, Walter Stevenson, Tucson, Ariz., for defendants in error.

PER CURIAM:

On February 23, 1954, plaintiff in error, Mae Harrison, was appointed the guardian of the person and estate of Ada Belle Durnell, an incompetent person who died in November, 1961. In June, 1963, the county court approved the Final Account and Supplemental Final Account of the guardian. On appeal to the district court, the guardian was surcharged the sum of $24,-816.06 and this appeal was perfected from the order overruling the motion for a new trial. The plaintiff in error will be referred to as Guardian and defendants in error will be referred to as Protestants.

Guardian first contends the trial court erred in refusing a continuance to allow her to bring in vouchers; in failing to rule on her motion to reopen; and in failing to reopen.

These contentions are premised on the general proposition that Guardian had the necessary vouchers and receipts and would have produced the same if the court had granted her the necessary time.

In determining these issues we find that an objection was first filed on January 3, 1963, and contained therein were numerous detailed items objected to. While the cause was pending in the county court Protestants filed a request that the accounts be supported by checks or vouchers as provided by law, and also filed a Request for Specific Findings of Fact and Conclusions of Law wherein there was itemized several transactions concerning their objections. On June 7, 1963, the county court entered its order approving the final and supplemental final account of the Guardian.

On August 7, 1963, a pre-trial conference was had in the district court proceeding and the cause was set for trial on October 24, 1963. Guardian was called as the first witness and she testified that the final report and supplemental report were prepared at her request and under her supervision. On cross examination, Protestants offered numerous exhibits disclosing that several items of income and assets of the estate had not been accounted for. A few minutes before the noon hour, Protestants stated to the court that it was incumbent upon the Guardian to produce vouchers, as required by statute, to prove her claim and asked leave of the court to serve a subpoena on the Guardian for the production of vouchers so that the same would be available at 1:30. Her attorney then stated it was physically impossible for him to be there but that he intended to introduce every check and every bank statement the Guardian had from the time of her appointment. The court recessed until 1:00 P.M. A subpoena duces tecum was served on the Guardian directing her to produce all the bank statements, deposit tickets and cancelled checks. During the proceedings concerning the production of such records her attorney advised the court that the majority of the records were in his office. The court stated that it would recess the case for an hour but it would not direct the production of such records because it felt it was incumbent upon the parties to make their own case. Guardian's attorney stated that he was physically unable to produce the records in such time and that if the court would grant a continuance that he could produce them.

The record does not disclose that Guardian attempted to comply with the provisions of Title 58 O.S.1961, § 550, by producing vouchers to support her accounts although in Protestant's Objections and Request such statute was specifically called to the attention of the Guardian and that Protestants expected compliance with the same. Protestants clearly called to the attention of the Guardian the various contested items and it could not be said that she was surprised in the items challenged or did not have reason to believe that it was incumbent upon her to produce the necessary vouchers and records to support her accounts. Guardian knew well in advance the challenged items before the hearing before the county court and approximately two and one-half months elapsed between the time the district court set the trial date at a pre-trial conference to the date of the trial. On the date of the trial, Protestants were ready with their evidence and challenged the accounts by offering numerous exhibits and several items of income which were unaccounted for in the final accounts.

In Sanditen v. Brooks Flame-Spray, Inc., Okl., 403 P.2d 471, we held that the ruling of the trial court on a motion for a continuance will not be disturbed on appeal unless there has been a clear abuse of discretion. To follow Guardian's argument to its ultimate conclusions would be, in effect, that it is not necessary for a Guardian to comply with the provisions of Title 58 O.S.1961, § 550, in rendering an account, but if a protest is filed and evidence is submitted which challenges the correctness of such account, the Guardian is entitled to a continuance, as a matter of law, to refute the evidence offered by the Protestants.

We do not place such a construction on Sec. 550, supra.

In our opinion, the Guardian knew the challenged items in the accounts and knew that she would be required to produce vouchers to support her accounts, and had ample time to prepare her case and have her evidence ready for submission. We can only conclude that the trial court did not abuse its discretion in refusing to grant a continuance.

On December 31, 1964, the trial court overruled all motions pending before the court and one of these motions was Guardian's Motion to Reopen. Therefore, we can not hold that the trial court did not rule on Guardian's motion to reopen. This is further substantiated by the fact that Guardian argues that the court erred in overruling such motion. In Banta v. Banta, 202 Okl. 86, 210 P.2d 346, we held that a request to reopen a case for the introduction of additional evidence is addressed to the sound discretion of the trial court, and its ruling thereon will not be disturbed by this Court unless it clearly appears that the trial court abused its discretion. See also City of Mangum v. Brownlee, 181 Okl. 515, 75 P.2d 174, where we said that the failure to use due diligence to procure evidence justifies the court's refusal to reopen.

In our opinion, the same reasons advanced for holding that the trial court did not err in failing to grant a continuance are applicable to the trial court's failure to reopen. We therefore conclude the trial court did not err in failing to reopen.

The Guardian next contends that irregularity of the district court appeal prejudiced the plaintiff in error, and prevented an adequate review by this Court, or the ascertainment of the facts by the court below. We cannot sustain this contention because in our opinion there was no irregularity in the proceedings which prevented an adequate review by this Court, or the ascertainment of the facts by the court below. The Guardian offered no evidence that was denied admission which was admissible. She did not offer evidence which if she had, might have made some difference in the outcome of the case or some phase of the case. The trial judge gave the opportunity to her and her counsel to bring in anything that would clarify the Guardian's contentions in the trial before the district court. The Guardian failed to raise this question at any time during the district court trial or at any time prior to the judgment of the trial court.

The Guardian also argues that the evidence fails to sustain the judgment of the trial court. There was evidence before the district court that the Guardian had not accounted for $14,154.34 in assets or income. Included in this item was $8,308.00 which reflected the difference between the amount of U. S. Government Bonds cashed and accounted for in the report. The record further showed that she was surcharged for disallowed disbursements on the annual account from February 24, 1960 to February 24, 1961, in the sum of $3,472.84, and this action was proper under the evidence. There was disallowed disbursement for failure to prove the amount claimed in the sum of $3,078.43 that was on the final account. The Guardian simply failed to prove these items. On the supplemental account there was disallowed the sum of $3,510.45. She also was charged $600.00 for selling to herself the incompetent's car and giving a note to the estate for the same amount which the record shows has not been paid. The total of the surcharges was $24,816.16.

In Hartford Accident & Indemnity Co. v. Hembree, 193 Okl. 249, 142 P.2d 618, 150 A.L.R. 468, we held that where a final account of a guardian has been presented and considered and surcharges made and disallowed, and an appeal is taken to this Court, the matter will be considered on appeal as an appeal from an equity judgment, and the surcharges made or disallowed will be approved where such action is not clearly against the weight of the evidence.

In our opinion the trial court's judgment is based on competent evidence and is not clearly against the weight thereof.

Judgment affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, HODGES, LAVENDER and McINERNEY, JJ., concur.

WILLIAMS, BLACKBIRD and BERRY, JJ., dissent.

The Court acknowledges the aid of Supernumerary Judge, HARRY L. S. HALLEY, in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.

McINERNEY, Justice (concurring specially on rehearing):

As correctly noted in the majority opinion, the contentions of error relied on for reversal of the judgment of the trial court "are premised on the general proposition that Guardian had the necessary vouchers and receipts and would have produced the same if the court had granted her the necessary time." This premise is not legally sound based on the record presented herein.

The record reflects that the clear, mandatory provisions of 58 O.S. 1961, § 550 were originally brought to the attention of Guardian by supplemental objections and requests filed April 29, 1963. After Guardian obtained the approval of the accounts by the county court without producing vouchers, an appeal was taken by protestants to District Court, a pre-trial hearing was held on August 7, 1963 and at that time the trial was set for *ten weeks later* on October 23, 1963. The Guardian proceeded to trial on that date without, according to the record, any request for a continuance predicated upon the physical disability or illness of her attorney, which assertion was first made only after the cross-examination of Guardian and immediately before resting

her case after the colloquy referred to in the dissent, and made absolutely no attempt to support her account with vouchers in compliance with 58 O.S.1961 § 550. Guardian, who had married since her appointment and whose name was now Cole, testified, on cross-examination, as follows:

"Q: Mrs. Cole, I'll ask you whether or not you have within your control all of the bank statements, cancelled checks and deposit slips reflecting your actions since you were appointed as Guardian?

A: Yes.

Q: Where are they?

A: They are at, well, you'll just have to go (to) the records and get the records. I don't have the deposit slips myself, no.

Q: Do you know where they are?

A: They are with my attorney.

Q: Mr. Wilson has them?

A: He's my attorney.

Q: To the best of your knowledge, are all of those available for the entire period? ·

A: Yes, sir."

The record reflects a total indifference to the obligation to produce the vouchers, not an inability to do so. The record does not reflect that vouchers were ever produced in support of the motion to reopen and there are no vouchers contained in the record by offer of proof to even demonstrate their existence. Reversal of this case on this record would be sheer speculation by this court that proper vouchers do, in fact, exist and that Guardian might, at a later time, choose to produce such vouchers. The record is not inconclusive in establishing whether the Guardian has failed to properly account; the record is conclusive that she did not properly account, and that she offered no legal or equitable excuse for her failure to comply with the provisions of 58 O.S. 1961, § 550, which provisions are mandatory upon both the litigants and the trial court.

Considering the record, this case falls within the observation made in In re Lewis' Estate, 81 Okl. 240, 196 P. 341, on page 346, wherein we said:

"It does appear that the guardian was like numerous other guardians who have an erroneous idea that when they are appointed guardian they become the owner of the ward's property * * * ."

The trial court could not approve the account without vouchers in view of 58 O.S. 1961, § 550; there was no abuse of discretion in not continuing the trial of the case when the Guardian was given over ten weeks after the setting of the case for trial to prepare and her attention had been drawn to both the specifically contested items and the statute; and there was no error for review by this court, under all the above circumstances without Guardian showing the actual existence of vouchers by an offer or tender of vouchers which could be included in the record.

I am authorized to state that JACKSON, C. J., and IRWIN, V. C. J., and HODGES and LAVENDER, JJ., concur in the views herein expressed.

WILLIAMS, Justice (dissenting):

I respectfully dissent to the majority opinion.

As noted in such majority opinion, during the noon recess of the trial below, guardian was served with a subpoena duces tecum to produce the vouchers and records relative to the guardianship and thereafter was recalled on cross-examination. At such time, guardian testified in effect, that although most of the vouchers and records were in the possession of her attorney, that some were located at her home in California; that she had not been at her home in California for some three weeks, and had come directly to Oklahoma City from Nevada and Arizona; and, that she had never been informed before coming to Oklahoma that the matter had been set for trial "here today". During this cross-examination the following colloquy between the court and counsel:

"BY MR. STEVENSON [Counsel for protestant]: We request the Court to direct her to produce the records that are in her possession, available to her, within a reasonable time, within the next hour.

"BY THE COURT: If counsel would like, I will recess this case for an hour but I'm not going to direct that this party return with any exhibits, I don't believe it's incumbent upon me or you to make her case or to make your case. I think that's each one's individual responsibility to make their case, and to come in for trial and start exercising Pre-Trial discovery, I think is a little too late.

"BY MR. WILSON: I understand he wants all of them, from the inception of this Guardianship.

"BY MR. STEVENSON: I only want what the law requires.

"WHEREUPON, there was argument of counsel and the Court made the following rulings:

"BY THE COURT: At this time, until it is shown that additional time is needed, the Court will take a thirty-minute recess for the purpose requested.

"BY MR. WILSON [Counsel for guardian]: Is the Court taking this recess for the purpose of me bringing them in? If the Court wants to see them, I'll bring them in, but I don't think that I can get all these in that length of tme.

"BY THE COURT: I'm not ordering you to bring them in, Mr. Wilson, but if you want to bring them in, you will have this thirty minutes to get them, or if you need a little extension we will give it to you.

"BY MR. WILSON: I'm not going to say anything, I say here in this Court, that I'm sick and I don't intend to go over there to my office with a stack that high, I have no help, I'm by myself, I'm not physically able to go over there and

do that. They have been there at all times. I'm not physically able to be here in this Courtroom.

"BY THE COURT: There is no reason, then, for the Court taking a recess. The record may show that the Guardian declines to produce them.

"BY MR. WILSON: No sir, the Guardian's attorney states that he is ill at this time and has been and that he is not physically able to go to my office and go through all my files and bring them here, we do not refuse to produce them.

"BY THE COURT: As I said, the record may show that the Guardian declines to produce the records as subpoenaed by the Protestants."

After protestants had rested, guardian requested a continuance to some future date to enable her to produce the vouchers and records. The trial court apparently refused this request by closing the evidence.

Approximately five weeks subsequent to trial, and prior to any pronouncement of judgment by the Court, guardian moved to reopen the case, stated that she had obtained all vouchers and records of the guardianship and requested permission to introduce such into evidence. This motion was eventually overruled by the court.

In my opinion, the trial court erred in overruling the guardian's motion to reopen.

As pointed out by the parties hereto, a request to reopen a case for the introduction of additional evidence is addressed largely to the sound discretion of the trial court and its ruling thereon will not be disturbed on appeal unless it clearly appears that the trial court abused such discretion. City of Mangum v. Brownlee, 181 Okl. 515, 75 P.2d 174; Save Sales Co., Toledo, Ohio v. Futral, 180 Okl. 145, 69 P.2d 349; Railway Express Agency v. Stevens, 183 Okl. 615, 83 P.2d 858. Under the circumstances of this case, it is my opinion that the ends of justice would have been served better by permitting a reopening of the

trial and that the refusal to do so was an abuse of discretion.

As above set forth, the guardian testified that she had not been informed that this matter was to be tried "here today" and, as she had not been to her home in California for some three weeks prior to her coming to Oklahoma, she had had no opportunity to determine if any of the requested vouchers, etc., were located at her home. Guardian's counsel stated that he was ill; that he had no one aiding him at his office, and, that it was physically impossible for him to obtain and produce in court the vouchers he had (in his office) within the time allotted either by the subpoenas, notices and/or proposed orders of court. He further stated that if given reasonable time, he would produce all such vouchers. Thereafter, and within approximately five weeks, he produced such papers in open court and requested permission to reopen and to introduce them into evidence.

Section 550 of Title 58 O.S. 1961, made applicable to guardian by the provisions of 58 O.S. 1961, § 883, requires a guardian to produce vouchers to support his accounts. Without these vouchers and any other records necessary to support the accounts being produced in evidence, it is my opinion that the record presently before this Court is inconclusive in establishing whether the guardian has failed to properly account, or, assuming she has failed to so account, in determining whether she was surcharged in the correct amount. Although I would not hold that a court in a proper case may not disapprove a guardian's account and properly surcharge such person if the guardian refuses or fails to timely produce the necessary vouchers and records, it is my opinion, in view of the circumstances, that it would be in the furtherance of justice for the guardian herein to be allowed to reopen to introduce such evidence.

As shown in opinion of the majority, a request for continuance was presented during the course of the trial. For the reasons discussed hereinabove and based upon

facts shown in the record, I am of the opinion that the overruling of that request likewise was error.

In my opinion, the judgment of the lower court should be reversed with directions to grant guardian a new trial.

I respectfully dissent.