Bessie Aline JOHNSON, Appellant,

v.

Mason Dean JOHNSON, Appellee.

No. 58058.

Supreme Court of Oklahoma.

Dec. 13, 1983.

As Amended Dec. 16, 1983.

540

Robert L. Locke, Jr., Robinson, Locke, Gage & Fite, Muskogee, for appellant.

Jim Jones, Sallisaw, for appellee.

OPALA, Justice:

This appeal from a divorce decree tenders for our review (a) the division of spousal property, (b) the trial court's refusal to award alimony, (c) the disposition of certain post-judgment motions and (d) the trial court's refusal to grant a new trial on grounds of newly-discovered evidence.

The parties to this suit had been married for thirty-two years when the wife, appellant herein, sought a divorce. Four children were born of the union, the youngest of whom reached majority during the pendency of the action. By various post-decree motions the wife sought (a) to settle the journal entry, (b) to commute unpaid temporary support to judgment, (c), to secure support during the pendency of appeal, and (d) to obtain an award for costs and attorney's fees. At the hearing on these motions the court granted attorney's fees but refused all other relief. The husband timely moved for new trial but later withdrew his request.[1] The wife afterwards

---

1. When a motion for new trial is pending, no party in the case can bring an appeal until after a ruling on the motion. 12 O.S.1981 § 991(b). Here the husband sought a new trial but withdrew his motion before the trial court could reach it for disposition. When the wife received a copy of the husband's withdrawal, her appeal time came to be triggered. Because such act has "appealable consequences", the appeal time begins to run when the withdrawal is actually communicated to the affected party. See *McCullough v. Safeway Stores, Inc.*, Okl., 626 P.2d 1332, 1334 [1981].

We need not answer here, and hence leave unsettled, the question whether an appellant who abandons or withdraws his own motion for new trial may become the beneficiary of extended appeal time—one which can be coun-

sought a new trial on the basis of newly-discovered evidence. All of her appeals were timely filed in the same case.[2] She is represented here by different counsel.

■ We deem her appeal from the denial of post-decree petition for new trial to have been abandoned since her brief-in-chief advances no argument for reversal of that decision.[3]

## I

## MOTION TO DISMISS

The husband seeks dismissal of this appeal because at the time of its commencement there was no "recorded written" memorial of the decree sought to be reviewed. He argues that the provisions of 12 O.S. 1981 § 32.2 impose such requirement. The last sentence in § 32.2 is:

" * * * A recorded written order, judgment or decree signed by the court is a *jurisdictional prerequisite to appellate review.*" [emphasis ours]

The trial court's judgment—first granting a divorce and then dividing spousal property on October 12, 1981—was not shown of record until it was reduced to a written memorial and filed in court on March 22, 1982. The appeal was lodged here before that date. When the appellate record came to be transmitted to this court it did contain a journalized written memorial of the court's divorce decree.

■ Two different meanings could be ascribed to the quoted sentence in § 32.2. Under one of them a written memorial would have to be entered upon the court's journal before the petition-in-error is brought; and under the other the record would have to contain a memorial of the judgment, from which the appeal is prosecuted, when the case is reached for consideration on review. We prefer and choose the second construction. This is so because we believe that when § 32.2 was amended in 1981—by the addition of the quoted sentence—the legislature intended to make the inclusion of a "recorded written" memorial a *sine qua non* of *appellate review* rather than a jurisdictional prerequisite to the commencement of an appeal.[4] The meaning we opt for today appears far more reasonable. It is in keeping with the reality of day-to-day forensic practice. In too many instances a journal entry cannot be settled within 30 days from the date the decision is rendered.[5] An absurd result would doubtless flow from any other construction.[6] A party would be required to do what, all-too-often, is not possible of accomplishment in 30 days. A time-honored rule of practice casts on the victorious party the responsibility of preparing a journal entry. The appealing party—nearly always on the other side of the case—has no firm control

---

ted from withdrawal date rather than from the date of the decision.

2. Her first appeal was brought from (a) the judgment in the divorce case and (b) from the order disposing of certain post-decree motions. The second appeal was brought from the post-decree order denying the wife's petition for new trial. See Rule 1.18(b), Rules on Perfecting a Civil Appeal, 12 O.S.1981, Ch. 15, App. 2.

3. *Osburn v. Bendix Home Systems, Inc.,* 613 P.2d 445, 448 [1980]; *Peters v. Golden Oil Co.,* Okl., 600 P.2d 330, 331 [1979]; *Harley v. Jobe,* 207 Okl. 296, 249 P.2d 468, 469 [1952].

4. This view comports with our holding in *Oklahoma Turnpike Authority v. Kitchen,* Okl., 337 P.2d 1081, 1085 [1959]. The journal entry is *only evidence of a judgment.* That evidence can be supplied any time before the case is reached for the appellate court's consideration.

5. The period allowed for completion of the record on appeal provides the appellant with additional time to comply with the terms of 12 O.S.1981 § 32.2 Rule 1.26(a), Rules on Perfecting a Civil Appeal, 12 O.S.1981, Ch. 15, App. 2. After the record has been transmitted to this court, and before it is reached for consideration, the written memorial may be included *nunc pro tunc* with leave of this court. Rule 1.24(b), Rules on Perfecting a Civil Appeal, 12 O.S.1981, Ch. 15, App. 2.

6. The legislature will not be presumed to have intended an absurd result. Statutory construction which would lead to an absurdity will be avoided if this can be done without violating legislative intent. *Grand River Dam Authority v. State,* Okl., 645 P.2d 1011, 1019 [1982]; *AMF Tubescope Co. v. Hatchel,* Okl., 547 P.2d 374, 379 [1976].

over the process. This was doubtless true here. The lag in settling the journal entry in this case was occasioned by the appellee. His inactivity will not be allowed to bring about a dismissal of this appeal.

## II

### POST–DECREE MOTION TO COMMUTE TO JUDGMENT UNPAID SUPPORT DUE UNDER A PENDENTE LITE ORDER

The wife contends the trial court erred in refusing to commute to judgment the arrearage due her under a pendente lite support order issued in the case. Since the divorce decree did not allow her any relief for these delinquent temporary support installments, the wife attempted, by a post-decree motion, to have the arrearage reduced to judgment.

Obligations created by interlocutory orders pendente lite do not survive, but merge in, the final judgment.[7] Unlike accrued unpaid installments under a decree or some final order, an arrearage due under the terms of an interlocutory order may be modified or extinguished retroactively.[8] Because the decree conclusively forecloses relitigation of liability under *any* pendente lite order, there can be no error in the trial judge's refusal to entertain a post-decree motion to commute unpaid temporary support installments. In short, the divorce decree operated effectively to extinguish all pre-existing rights of the parties arising out of their former marital status.[9] In the absence of a valid contract preventing this legal consequence from attaching, rights between former spouses are governed exclusively by the terms of the divorce decree. All of the wife's matrimonial claims merged in the decree which thereafter operated as a bar to judicial re-examination of pendente lite obligations.

The trial court's denial of wife's post-decree motion for judgment in the amount of arrearage due her under temporary support order is hence free from legal error.

## III

### ERRORS IN DISPOSITION OF JOINT- LY–ACQUIRED PROPERTY

The wife advances several arguments with respect to the division of spousal property. She was awarded her personal effects, a 1974 car, household furniture and items valued at $3,400, the home with an office building located upon 4 acres of land and 2 acres of adjacent land valued at $69,624, ninety acres of unimproved land valued at $33,000 and one assembly of music equipment valued at $10,000. The husband was awarded his personal effects, desk and chair, a 1974 car, 50% of the stock in a family-owned corporation, Green Country Contractors, Inc., valued at $85,000, ten acres upon which the corporation has a repair shop valued at $15,000, and an option to purchase the wife's ninety acres which was not exercised and has since expired. The share set apart to the wife was valued at $116,024 and that to the husband at $100,000. This represents a 54%–46% split of assets.

The wife's principal contention is that the corporate stock was considerably undervalued. According to her argument, three methods are available for determining the fair value of that stock. These are: (1) net asset value; (2) market value and (3) investment or earning value, all of which may

**7.** The trial judge retains full control over all temporary orders and the manner of their enforcement. None is accorded res judicata effect. *Interlocutory orders made in the course of an action or proceeding are not binding on the trial court when fashioning the final adjudication of the controversy. Reynolds v. Reynolds,* 192 Okl. 564, 137 P.2d 914, 916 [1943]; *Lee v. Epperson,* 168 Okl. 220, 32 P.2d 309, 312 [1934]; *Ft. Dearborn Trust & Savings Bank v. Skelly Oil Co.,* 146 Okl. 179, 293 P. 557, 562 [1930]; *Wells v. Shriver,* 81 Okl. 108, 197 P. 460, 472 [1921]; *Kuchler v. Weaver,* 23 Okl. 420, 100 P. 915, 918 [1909].

**8.** *Reynolds v. Reynolds,* supra note 7; *Wells v. Shriver,* supra note 7; *Powell v. Powell,* 191 Okl. 581, 131 P.2d 1019, 1021 [1942].

**9.** 12 O.S.1981 § 1279; *Shipp v. Shipp,* Okl., 383 P.2d 30, 33 [1963]; *Deweese v. Fisher,* Okl., 658 P.2d 1153, 1154 [1983].

be assigned varying weights in arriving at a fair-value determination. In support of her argument, the wife cites *King v. Southwestern Cotton Oil Company*,[10] where these methods were discussed. In *King*, evidence pertaining to each of these methods in relation to the stock was presented by an expert witness—a PhD in finance, accounting and economics—who had fourteen years of teaching experience in these disciplines. No comparable testimony was elicited by the wife in the case at bar. The wife urges here that one or all of the methods discussed should have been employed by the trial court to reach a higher value for the stock.

Net-asset value in *King* was determined by adding the company's book value[11] to an upward adjustment for various tangible assets and then dividing the total by the number of outstanding shares of stock at that date to reach a sum certain. The investment value method was found inappropriate in *King* and no evidence of market value was adduced.

The wife urges us to use the *net-asset value* method to arrive at a fair value for the husband's interest in the stock. She asserts the value of the stock is $209,134, which, according to the 1979–1980 financial statement, represents one-half of the net assets of the corporation. In arriving at this figure, the wife does not take into consideration the liabilities of the corporation which are reflected on the financial statement. One half of the corporate liabilities amount to $139,726. When this is subtracted from the net asset figure above, the stockholders' equity is only $69,456.

Under the *investment earning* method, the wife projects the earnings of the corporation for the next five years to be $1,668,756, using a 3 to 1 capitalization ratio based on the evidence of growth of earnings for the 1979–1980 period only. This approach does not take into consideration the vagaries of the economy and its effect on the construction business. Unlike the evidence presented in *King*, which was based on the company's actual performance over a five-year period, the calculations urged here are based on mere conjecture.

An action for divorce, alimony and division of property is one of equitable cognizance, and the trial court's judgment will be left undisturbed unless found to be clearly against the weight of the evidence.[12] We do not believe that the valuation established for the stock was legally flawed. It was based upon a financial report elicited by the wife. The trial judge could have selected any one of several methods of computing the value of the stock. The method chosen and the value established for the stock was neither clearly against the weight of the evidence nor contrary to law.

The wife also contends that the musical equipment[13] should not have been included as an item of spousal assets because it was a gift from her husband to their youngest son. She further argues that she was disadvantaged by an overvaluation of the equipment. She offered no evidence as to its worth. Whether the musical equipment was a gift to the son or a part of the marital estate was a fact question. The husband denied any intention of purchasing it as a gift to the son, and there was proof that the wife, who was skilled in the operation of the equipment, used it as an asset of the family household. The trial judge resolved the disputed issue by ruling that it was a spousal asset. His finding is not clearly against the weight of the evidence. Because we are not functioning

10. Okl., 585 P.2d 385, 390 [Okl.App.1978].

11. Book value, as defined by Black's Law Dictionary, 5th Ed. [1979] is: "Accounting terminology which gives a going-concern value for a company. It is arrived at by adding all assets and deducting all liabilities and by dividing that sum by the number of shares of common stock outstanding."

12. *Creech v. Creech*, Okl., 292 P.2d 376, 378 [1956].

13. The musical equipment in suit consists of: a public address system with high-powered drivers, large speakers, several microphones, a monitoring system, two multiple amplifiers, 2 or 3 guitars and some accessories.

here as a court of first instance, we cannot disturb the challenged finding.

■ The wife also argues that the division of the tract—6 acres to her and 10 to her husband—will result in a legally impermissible continued dominance of the property by the husband. She urges that because the 10-acre tract is adjacent to her home, her husband will have an opportunity to observe all the events taking place at her house and that this, in effect, will cause the property awarded to her to remain under his "dominance and control". She likens her situation to that found in *Gist v. Gist*[14] where the homesite awarded to the wife was 15 or 16 steps away from the barn and cow lot set apart to the husband. We cannot agree that this is the situation in the case at bar. Although the husband's 10-acre tract is adjacent to the wife's 6 acres, the record does not show that the homestead is even within the sight of the husband's property. Furthermore, the record reflects the trial judge did afford himself the opportunity to view the premises before effecting a severance of the common title. There is no showing that he failed to take into consideration the location of the homesite near the building situated on the husband's property in an effort to guard against the detrimental effect of a potentially intrusive proximity. We find no error in the manner these 16 acres came to be severed and set apart to the contesting spouses.

## IV

### MOTION TO REOPEN CASE FOR FURTHER EVIDENCE

The wife argues that the trial court erred in refusing to reopen the proceedings to consider new evidence pertaining to the financial worth of the corporation. She contends that the court's ruling on the value of the corporation was based on outdated financial statements and tax returns. This information, she complains, is not competent evidence to determine the value of the company. She attached to her motion copies of corporate checks showing the purchase of certificates of deposit and equipment as well as transfers made to the company's savings account.

■ A request to reopen a cause for the introduction of additional evidence by a party who has rested his case is addressed largely to the discretion of the trial court. Its ruling will not be disturbed on appeal unless it clearly appears that the trial court abused its discretion.[15] The court's refusal to reopen a case is not an abuse of discretion where the party has failed to use due diligence to procure testimony before resting his case.[16]

■ The trial court received evidence and heard testimony from the wife and husband about the value of the stock. At the conclusion of the trial the wife rested her case. The trial court's valuation of the stock appears to have been based largely upon the 1979–1980 financial statements *introduced by the wife* which she now urges are outdated. The evidence she sought later to introduce by motion to reopen could have been reached by subpoena or other discovery method. Because the wife did not use due diligence to procure the evidence before trial, she cannot now complain the trial court abused its discretion in refusing to reopen the case.

## V

### ERROR IN REFUSING TO GRANT ALIMONY

The wife urges error in the trial court's refusal to grant her alimony. She complains that she sought alimony in her petition and met her burden at trial.

During her 32-year marriage, the wife was largely dependent on the income of her husband. During this time she raised four children, all of whom are now of age. Fif-

**14.** Okl.App. 537 P.2d 460 [1975].

**15.** *In re Guardianship of Durnell,* Okl., 434 P.2d 905, 908 [1967].

**16.** *City of Mangum v. Brownlee,* 181 Okl. 515, 75 P.2d 174, 176 [1939].

teen years before the divorce she had worked as a beautician and had a beauty shop in the building that was awarded to her by the decree. That building is now being utilized by the family-owned corporation. She most recently worked a short while for the corporation as a secretary until she was hospitalized for a nervous disorder. She has been unsuccessful in securing employment as a clerk at several retail establishments in the area. The property awarded to the wife, valued at $116,024, consisted mainly of the homestead, an office building located on a 6-acre tract and a 90-acre tract of undeveloped land.

Where a substantial amount of spousal property is granted by the court, an alimony claim must be supported by proof of excess monetary needs to cushion the economic impact of transition and readjustment to gainful employment. Alimony is awarded based on *demonstrated* need.[17]

The evidence in the record does not sufficiently show (1) the cost of maintaining the wife during her post-matrimonial economic readjustment period, (2) the amount of income from income-producing property set aside to her and (3) the anticipated length of time that will be required to make the necessary transition. The wife has failed to discharge her burden of affirmatively demonstrating the amount of support, if any, that is needed during the period of her economic readjustment. Legal error may not be presumed by the reviewing court from a silent record.[18]

*On appeal of an equity case this court will render that decree which the chancellor should have rendered on the record presented.*[19] Because the record before us fails to disclose the existence, nature and extent of the wife's need for alimony, we

may not alter the chancellor's decree. It must hence stand undisturbed.

Judgment of the trial court is affirmed. Each party shall bear its court costs and attorney's fee on appeal.

BARNES, C.J., SIMMS, V.C.J., and HODGES, LAVENDER, DOOLIN, HARGRAVE and WILSON, JJ., concur in Parts I and II.

BARNES, C.J., and LAVENDER, DOOLIN and HARGRAVE, JJ., concur in Part III.

BARNES, C.J., and HODGES, LAVENDER, DOOLIN, HARGRAVE and WILSON, JJ., concur in Part IV.

HODGES, LAVENDER, DOOLIN and HARGRAVE, JJ., concur in Part V.

SIMMS, V.C.J., concurs in part and dissents in part as to Part III.

HODGES, J., dissents from that part of Part III by which inclusion of the musical equipment as a spousal asset is affirmed.

WILSON, J., dissents from Part III.

SIMMS, V.C.J., dissents from Part IV.

BARNES, C.J., SIMMS, V.C.J., and WILSON, J., dissent from Part V.

---

**17.** *Kirkland v. Kirkland,* Okl., 488 P.2d 1222, 1227 [1971]; *Weaver v. Weaver,* Okl.App., 545 P.2d 1305, 1309 [1975].

**18.** *Hamid v. Sew Original,* Okl., 645 P.2d 496, 497 [1982].

**19.** The true rule for cases cognizable in chancery is that on appeal "... it is the duty of this court to consider the whole record, to weigh the evidence, and, when the judgment of the trial court is clearly against the weight of the evidence, render or cause to be rendered such judgment as the trial court should have rendered. * * *" *Schock v. Fish,* 45 Okl. 12, 144 P. 584, 587 [1914]; *Sango v. Sango,* 105 Okl. 166, 232 P. 49, 51–52 [1924] (syllabus 2); *Champion v. Champion,* 203 Okl. 105, 218 P.2d 354, 356 [1950]; *Marshall v. Marshall,* Okl., 364 P.2d 891, 895 [1961].